**The CONNECTICUT LIGHT & POWER COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Nos. 339, 340, Dockets 72–1664, 72–1816.**

United States Court of Appeals, Second Circuit.

Argued Jan. 16, 1973.

Decided April 6, 1973.

---

\* Emphasis supplied.

Harold N. Mack, Boston, Mass. (Morgan, Brown, Kearns & Joy, Boston, Mass., on the brief), for petitioner.

Allison W. Brown, Jr., Atty., NLRB, Washington, D. C. (Peter G. Nash, Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Steven C. Kahn, Atty., NLRB, Washington, D. C., on the brief), for respondent.

Milton A. Smith and Otto F. Wenzler, Washington, D. C., and Gerard C. Smetana and Lawrence M. Cohen, Chicago, Ill., for The Chamber of Commerce of the United States, amicus curiae.

Before FRIENDLY, Chief Judge, and OAKES and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

The Connecticut Light & Power Company (the Company) has petitioned to review and set aside an order of the National Labor Relations Board issued May 8, 1972, 196 N.L.R.B. No. 149 (1972), which essentially required that the Company bargain in good faith with the Union as to the selection of an insurance carrier for the Company's employee medical-surgical benefits plan. The Board has cross-petitioned for enforcement of its order. We agree with the Company that the selection of an insurance carrier under the circumstances presented here is not a mandatory subject for bargaining within Section 8(d) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(d) (1970). We therefore grant the petition to review and set aside the Board's order, and we deny the cross-petition to enforce the order.

## I.

The Company is a Connecticut corporation.[1] It is a public utility engaged in the production, distribution and sale of electricity and gas. It is engaged in commerce within the meaning of the Act.

System Council U–24, International Brotherhood of Electrical Workers, AFL–CIO, and its Local Unions 420, 753, 1045, 1175, 1226, 1317 and 1817 (the Union), are labor organizations within the meaning of the Act. Together they serve as the exclusive representative for all the Company's employees within the relevant bargaining unit. For many years, the Company and the Union have had a collective bargaining relationship.

The Company has long provided its employees with a non-contributory, Company-paid medical-surgical insurance plan. Since 1967 the carrier of this insurance plan, which includes major medical coverage, has been the Aetna Life Insurance Company (Aetna). For several years prior to 1967, the Company had contracted with Blue Cross-Connecticut Medical Service (Blue Cross) for the basic medical-surgical insurance, and with the Hartford Accident and Indemnity Company for major medical insurance.[2]

In 1969, the Union informed the Company of its dissatisfaction with Aetna's administration of the insurance plan. As a result, the Company secured various changes from Aetna. Nevertheless,

---

1. Our summary of the facts is based on the trial examiner's findings, all of which were affirmed by the Board.

2. Prior to the Blue Cross-Hartford arrangement, the coverage was secured from Aetna and Blue Cross alternately.

during the 1971 collective bargaining negotiations, the Union again expressed its dissatisfaction with Aetna and sought to include in those negotiations the reinstatement of Blue Cross as the carrier for the employee insurance plan. The Company did bargain during the 1971 negotiations with respect to coverage, benefits and administration of the plan; but it steadfastly refused to bargain as to the selection of the carrier, maintaining that it had the right unilaterally to choose the carrier.

On May 14, 1971, the Union filed a charge with the Board, alleging a refusal by the Company to bargain, in violation of Section 8(a)(1) and (5) of the Act, 29 U.S.C. § 158(a)(1) and (5) (1970). That charge resulted in the issuance of a complaint by the General Counsel on July 19, 1971.[3] A hearing was held before a trial examiner on October 18, 1971. On February 2, 1972, the examiner filed a decision, in which he found that the Company had unlawfully refused to bargain as to the selection of an insurance carrier for the employee medical benefits plan. On May 8, 1972, the Board affirmed the trial examiner's decision and adopted his recommended order. It ordered the Company to cease and desist from refusing to bargain collectively as to the selection of an insurance carrier, to bargain in good faith on that subject upon request of the union, and to take certain other affirmative action to comply with the order.

The sole issue before us on the Company's petition to review and the Board's cross-petition to enforce is whether the Board correctly concluded that the selection of an insurance carrier under the circumstances presented here is a mandatory subject for bargaining within the meaning of Section 8(d) of the Act.

## II.

The requirement that an employer bargain collectively with the representatives of its employees, pursuant to Section 8(a)(5) of the Act, is limited by Section 8(d) to an obligation to confer as to "wages, hours, and other terms and conditions of employment . . . ." 29 U.S.C. § 158(d) (1970). It is well established that included within that language are such "non-wage" benefits as the group health insurance here involved. E. g., W. W. Cross & Co. v. NLRB, 174 F.2d 875, 878 (1 Cir. 1949); Inland Steel Co. v. NLRB, 170 F.2d 247, 251 (7 Cir. 1948), cert. denied, 336 U.S. 960 (1949) (accepting the Board's conclusion that "the term 'wages' . . . must be construed to include emoluments of value, like pension and insurance benefits, which may accrue to employees out of their employment relationship . . . . Realistically viewed, this type of wage enhancement or increase, no less than any other, becomes an integral part of the entire wage structure . . . ."). The Company here does not dispute the inclusion of the instant group insurance plan within the term "wages". Indeed, it has at all times freely negotiated with regard to the benefit levels and administration of the plan. Further, as noted above, it successfully obtained various changes from Aetna following notification from the Union of the latter's dissatisfaction with certain aspects of the plan.

In Chemical Workers, Local 1 v. Pittsburgh Plate Glass Co., 404 U.S. 157 (1971), the Court was asked to decide whether retirees' benefits—i. e., benefits for former employees already retired—is a mandatory subject for bargaining under Section 8(d). In holding that, because retirees are not "employees" under Section 2(3) of the Act, 29 U.S.C.

---

3. In addition to the Company's refusal to bargain as to the selection of an insurance carrier, the charge and the complaint alleged a refusal to bargain as to retirees' benefits. The trial examiner dismissed that portion of the complaint on the authority of Chemical Workers, Local

1 v. Pittsburgh Plate Glass Co., 404 U.S. 157 (1971), which held that retirees' benefits are not a mandatory subject of bargaining within Section 8(d) of the Act. The Board affirmed that ruling. The issue has not been raised before us.

§ 152(3) (1970), the refusal to bargain was proper, the Court observed that it was required also to consider whether such benefits nevertheless were within the ambit of compulsory negotiation topics: "Section 8(d) of the Act, of course, does not immutably fix a list of subjects for mandatory bargaining . . . . But it does establish a limitation against which proposed topics must be measured. In general terms, the limitation includes only issues that settle an aspect of the relationship between the employer and employees." 404 U.S. at 178. This, as the Court observed, depends on whether the matter *"vitally affects the 'terms and conditions' of [the] employment."* 404 U.S. at 179. (emphasis added).

A recent Sixth Circuit decision examined the applicability of that standard to the selection of a carrier for an employee medical-surgical insurance plan. In Bastian-Blessing, Division of Golconda Corp. v. NLRB, 474 F.2d 49 (6 Cir. 1973), the court held that under the specific facts of that case the naming of an insurance carrier for an employee group benefit plan was a mandatory subject for bargaining. We find *Bastian* distinguishable from the instant case in significant respects. There, Aetna had been the carrier of the group plan since World War II. The plan was contributory in nature, the employees paying approximately 40% of the cost. In 1970, the company unilaterally cancelled the Aetna policy and began a self-insurance plan. The Board found that the change adversely affected the employees in important respects: (1) the new plan "omitted entirely two significant employee benefits: a conversion privilege without evidence of insurability, and the certainty of coverage of new-born babies under the $20,000 major medical benefit"; (2) it deprived the employees of

"enforceability of the prior master contract and of Aetna's administration of that contract"; and (3) a degree of uncertainty was created as to the funding of the new plan which the Board considered to have "an adverse impact on the employees' previously negotiated benefits." 474 F.2d at 51–52.

The court's conclusion that the company had violated Section 8(a)(5) of the Act clearly was based on the unilateral *changes* in the *terms* of the insurance plan, referred to above. The court noted that it had found no case law which squarely supports "the proposition that the specific insurance carrier for a group health plan is a mandatory subject for bargaining." 474 F.2d at 53–54. Instead, it chose to confine its ruling to the facts of the case before it, where it was impossible "to find a way to separate the carrier from the benefits." 474 F.2d at 54. And it concluded that:

"We emphasize that the conclusion reached herein is governed by the facts of this case and is not to be interpreted as a ruling by this Court that the naming of an insurance carrier for an employee group benefit plan, in the absence of other considerations, is a mandatory subject for bargaining." 474 F.2d at 54.

Similarly, the other cases cited to us which required bargaining with regard to the carrier of the employees' insurance plans involved substantive changes in benefits which dictated the results. E. g., Wisconsin Southern Gas Co., 173 N.L.R.B. 480 (1968); Wabana, Inc., 146 N.L.R.B. 1162 (1964).[4] Here, there have been no specific allegations of any changes in coverage, levels or administration of the plan. All the Union has alleged is general "dissatisfaction" with Aetna. Equally important, the Company has responded to specific complaints with good faith negotiation; and, as the

---

4. Even if we were to find such prior administrative decisions to have dealt with facts indistinguishable from those at bar, they of course would not be controlling here as to the legal issues involved. "Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." NLRB v. Brown, 380 U.S. 278, 291 (1965).

Board found, the Company has been able to obtain modifications from Aetna.

Consequently, we are unable to conclude that the Company has violated its obligation to bargain under *Pittsburgh Plate Glass*. The Company at no time has refused to negotiate with the employees as to any subject that "vitally affects the 'terms and conditions' of their employment." Chemical Workers, Local 1 v. Pittsburgh Plate Glass Co., *supra*, 404 U.S. at 179. In Westinghouse Electric Corp. v. NLRB, 387 F.2d 542, 548 (4 Cir. 1967) (en banc), the court observed that:

> "[S]ince practically every managerial decision has some impact on wages, hours, or other conditions of employment, the determination of which decisions are mandatory bargaining subjects must depend upon whether a given subject has a significant or material relationship to wages, hours, or other conditions of employment."

The benefits, coverage and administration of the plan in the instant case clearly are proper bargaining subjects.

We hold that the Company, having negotiated about those matters, was free to choose any carrier that would satisfy the Company's agreement with the Union.

### III.

Our holding as stated above, however, should not be construed to mean that in all cases may the selection of a carrier be divorced from the elements of employee health insurance that traditionally have been held to be mandatory subjects of bargaining. As in *Bastian*, we are reluctant to attempt to formulate a test for determining in which cases the identity of the insurance carrier itself vitally affects the terms and conditions of the employment. In *Bastian*, the court found a sufficient interrelationship to require bargaining. Here, on the other hand, we find that all the matters within the bargaining requirement can be, and have been, the subject of negotiations between the Company and the Union *without* reference to the identity of the carrier. Moreover, should the Company's choice of a carrier produce a situation where the Company is unable to fulfill its agreement under the collective bargaining contract, the Union has a remedy under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 (1970). Thus, while a different result might be necessary where, as in *Bastian*, a change of carrier were found to affect the bargained-for terms of the employee insurance plan, or where, for example, the mal-administration of the plan by the company-selected carrier were found to be so pervasive and pernicious as to have the "vital effect" contemplated in *Pittsburgh Plate Glass*, we do not pass on such matters here because they are not before us. All that the Union has alleged here is an undefined "dissatisfaction" with Aetna's administration.

We hold that the Board on the facts of this case erroneously concluded that the Company had violated its duty to bargain.

The petition to review and set aside the Board's order is granted; and the cross-petition for enforcement is denied.