**ARNOLD GRAPHICS INDUSTRIES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 73–2189.

United States Court of Appeals, Sixth Circuit.

Nov. 5, 1974.

Donald N. Jaffe, M. Alfred Roemisch, Cleveland, Ohio, for petitioner.

Elliott Moore, Peter Nash Deputy Associate Gen. Counsel N. L. R. B., Washington, D. C., John Irving, Patrick Hardin, Paul Speilberg, Stephen D. Quinn, N. L. R. B., Pittsburgh, Pa., for respondent.

Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This case is before the Court on petition of Arnold Graphic Industries, Incorporated, to review an order issued against it by the National Labor Relations Board, respondent, on October 11, 1973. (Sec. 160(f) Title 29, U.S.C.) The order and decision of the Board is reported at 206 N.L.R.B. No. 43. The Board has filed a cross-application for enforcement of its order. Although the subject of this action is a plant in Franklin, Pennsylvania, this Court has jurisdiction over the proceeding for the reason that the Company's headquarters and principal place of business are in North Canton, Ohio.

The Company is engaged in printing and related lines and in addition to the

Franklin, Pennsylvania plant, operates three other plants, located at Cleveland, Ohio, Gastonia, North Carolina and Hagerstown, Maryland. At the time of the inception of the difficulties, herein described, the Franklin plant employed about one hundred fifty persons, all of whom were members of and represented by three unions. These unions were: the International Brotherhood of Pulp, Sulphite and Paper Mill Workers, Local No. 262, Franklin Printing and Pressmen and Assistants Union, Local No. 90, and International Brotherhood of Bookbinders and Bindery Workers Union, Local No. 145, the charging Union in these proceedings. The Bookbinders Union, at this time had about twenty-five members.

On February 29, 1972, the Regional Director of Region Six of the National Labor Relations Board filed a Complaint and Notice of Hearing on behalf of the Bookbinders Union against Arnold Graphic Industries, Inc., charging unfair labor practices in violation of Sections 8(a)(1), 8(a)(3) and 8(a)(5) of the National Labor Relations Act. The Union and the Company were represented by counsel and a trial was had before an Administrative Law Judge.

The alleged violations are: refusal to bargain in good faith with the Union; negotiating with the Union in bad faith with no intention of entering into a final bargaining agreement; unilaterally and without prior notice to the Union laid off all employees in the unit involved and purportedly discontinued the work of the employees in such unit; in September of 1971, withdrew recognition from the Union as exclusive bargaining representative of the employees in the unit involved; also in September 1971, unilaterally changed the working conditions of the employees in said unit; since October 1971 has refused to meet with the Union as the collective bargaining representative for such employees; since September and October the petitioner has required the employees in the unit involved to become members of another Union; and that these employees have been required to pay dues and initiation fees in said Union.

It was stipulated that the last collective bargaining agreement between the parties expired on August 31, 1971. This was in accordance with an agreement by the three Unions of the Company for an extension from the expiration date from August 31, 1970. The three Unions were invited to a meeting on May 21, 1971 for the purpose of negotiating new contracts. The Bookbinders' negotiating representative was unable to attend this meeting and so members of its Union sat in the meeting only as observers.

At the meeting the Company made an offer to the three Unions which was the same as its new contract with the Union at the Hagerstown plant. It was explained to the three Unions that this proposal had been accepted by the Union at the Hagerstown plant. At the same time the Unions were told that the Franklin plant was unprofitable and that there was a question about what should be done with it. The Company offered its books for examination. The offers as made by the Company to the three Unions resulted in collective bargaining agreements between the Company and the two Unions other than the charging Union.

On June 1, 1971, a letter was written on behalf of the Bookbinders' Union to Mr. Arnold, President of the Company, calling his attention to the expiration of its contract on August 31, 1971, and requesting a bargaining meeting. Enclosed in the letter were proposed contract changes including an hourly rate of $4.50 per hour which was a 125 per cent increase over the old contract rate. On June 30, 1971, the Company accepted the termination as of August 31, 1971, unless a new contract was negotiated. A meeting was held on July 1, 1971, at the request of Arnold for the purpose of clarification of the Bookbinders' demands. The Company regarded the

Bookbinders' demands as being unreasonably high. This meeting was attended by Mr. Gross, plant manager, and Mr. Gable for the Company. Mr. Cunic, bargaining representative for the Union, Gerald Detric, president of the Union and seven or eight others from the wages committee of the Union attended for the Union. Arnold was later told that the Bookbinders was serious in its demands.

The next meeting was held on August 6, 1971, with Arnold Gross, Gable and Roemisch, Counsel for the Company, attending for the Company and Cunic, Detric and the committee of employees in attendance for the Bookbinders. Arnold explained that the Union's demands were much too high to permit the Company to meet its competition. The representatives of the Union then caucused and returned with reduced demands, about 60 per cent higher than the old contract. Arnold said that these demands were still too high and he explained to the Union representative that with a Union contract at Hagerstown in accordance with the terms offered to the Bookbinders, he could not send work to the Franklin plant. When the Union representatives said they were going to stand on their revised demands, Arnold told them he would take their proposals up with the Board of Directors. The Board of Directors met about one week later and at about the same time the government instituted the wage-price freeze of August 13, 1971.

No further communications were sent by either party until October 15, 1971. At this time Detric went to the plant to see Arnold, but he was in California. He claimed that he asked Gene Evans, the plant manager, to ask Arnold to set up a meeting and let him know of it. Arnold testified that Evans told him of Detric's call but said nothing about a meeting. Neither party pursued the matter further.

On August 31, 1971, a letter was written on behalf of the Bookbinders saying that their employees would work past the expiration date of August 31st until the Wage-Price freeze end November 13, 1971. On September 22, 1971 Evans wrote to Detric, saying, that the Union contract had expired on August 31st and that the Company had phased out the operation which involved many of the Union members. He also stated that the Company would like to use some of the Bookbinders' members in other occupations which would make them members, after thirty days, in the Pulp, Sulphite and Paper Mill Workers Union. He also stated that the Company considered the relationship with the Bookbinders' Local terminated.

In November, 1971, the Union distributed substantially all of the money from its treasury to its members. Each member of the Union including those who were working received $225.

Upon the facts as herein above set forth, the Administrative Law Judge made findings as follows:

"I find, under the above facts, that there was good faith bargaining by the Respondent and that any allegation in the complaint to the contrary has not been sustained by a preponderance of the credited evidence. The facts show that Respondent did not put its offer on the table with a 'take it or leave it' attitude and a fixed determination not to bargain further. It did bargain further and it is clear that the Bookbinders made a final offer when it modified its demands on August 6, 1971. Respondent took this Offer to its Board of Directors thereby evidencing good faith in seriously studying the Bookbinders' proposal. Of course the wage freeze became effective at this time and no one in the county (sp) knew for several days or weeks just how much wage increases would be permitted. I cannot find a failure on the part of Respondent to make the first move toward bargaining thereafter to be probative evi-

dence of bad faith bargaining. There was a mutual responsibility."

The General Council filed exceptions to the decision of the Administrative Law Judge and upon review the Board made the following conclusions of law in disagreement with the Administrative Law Judge.

1. The Company violated Section 8(a)(5) and (1) of the Act by withdrawing recognition from Local 145 (Bookbinders' Union) as the exclusive bargaining representative of its employees in the appropriate unit on September 22, 1971.

2. The Company negotiated with Local 145 in bad faith with no intention of entering into any final and binding agreement, except on its own terms in violation of Section 8(a)(5) and (1) of the Act.

3. The Company violated Section 8 (a)(5) and (1) of the Act by recognizing the International Brotherhood of Pulp, Sulphite and Paper Mill Workers, Local 262, AFL–CIO, as the exclusive representative of employees in the appropriate unit represented by Local 145, who were recalled to work in August and September.

■ Upon our reading and study of the record we conclude that the findings of fact on which these legal conclusions of the Board are based are not supported by the evidence. Considering the record on these issues we conclude that the findings of the Administrative Judge are substantially supported by the evidence.

At the time of the meeting of August 6, 1971, the Company was moving the equipment used by the Bookbinders' unit to the Hagerstown plant. At the same time members of the Union were being laid off. By September 13th all of the members of the Bookbinders' unit had been laid off. There was no prior notice given to the employees or the Union concerning the removal of this equipment and there were no negotiations with the Union relative to the removal and the lay off of employees.

The Administrative Law Judge found that this unilateral action, the removal of the equipment used by the Bookbinders and the laying off of the members without first bargaining with the Union was a violation of Section 8(a)(5) and (1) of the Act. The Board agreed with this finding.

■ We will enforce the affirmative action required by the Board's order relative to the unilateral action of the Company in removing equipment and laying off employees to the extent following:

"(c) Upon request bargain collectively with International Brotherhood of Bookbinders, Bindery Workers Union Local No. 145, AFL–CIO, about the effects of its decision to transfer equipment used by unit employees, including bargaining about the return of such equipment to its Franklin, Pennsylvania plant.

(d) Offer to all unit employees laid off at its Franklin plant during August and through September 13, 1971, immediate and full reinstatement to their former or substantially equivalent positions at Franklin, if the Respondent decides to resume operations there, and otherwise at Hagerstown without prejudice to their seniority or other rights and privileges, discharging if necessary any persons hired subsequent to the first layoff of a unit employee in August 1971; all in the manner set forth in the Remedy section of this Decision. If there are not a sufficient number of jobs for all the employees to be offered reinstatement, the Respondent shall place the names of those for whom jobs are not available on a preferential list in the order of their seniority, and, thereafter, offer them reinstatement before other persons are hired for such work."

We do not enforce that portion of the order which requires the Company to make whole the employees of the unit laid off at Franklin during August through September 13, 1971, for any loss of earnings suffered by reason of the unilateral transfer of unit work to Hagerstown. This part of the order is not supported by substantial evidence.

On the contrary we are of the opinion that the reasoning of the Administrative Law Judge in footnote 2 of page 8 of the Tr. is supported by substantial evidence.

"[2] A full restoration of the *status quo* ante of the parties is inappropriate in this case in view of: (a) Respondent's history of harmonious labor relations with Bookbinders; (b) the absence of anti-union motivation in the unilateral actions; (c) the economic hardship to Respondent and to third party interests; and (d) Respondent's willingness to recognize Bookbinders as stated by its counsel in closing argument. Jersey Farms Milk Service, Inc., *supra*." (148 NLRB 1392)

Notice to each unit employee shall be mailed in accordance with that part of the order which we enforce.

The Regional Director for Region 6 shall be notified within twenty days from the date this decision becomes final, as to what steps the Company has taken to comply herewith.

The Board may reserve the right to amend or modify the order herein enforced if found necessary by reason of changed circumstances. The Board has been administratively advised that the International Brotherhood of Bookbinders, AFL–CIO, and the Lithographers and Photographers Union merged on September 4, 1972, to become the Graphics Art International Union, AFL–CIO, CLC.

Enforcement of the order of the Board is granted only to the extent set forth in this opinion. In all other respects enforcement is denied.