337 S.E.2d 920

. Leslie H. GORDON, et al.

v.

Phyllis J. RUTLEDGE, Clerk etc.,

and

George S. BELCHER, et al.

v.

Phyllis J. RUTLEDGE, Clerk, etc., et al.

No. 16259.

Supreme Court of Appeals of
West Virginia.

Dec. 11, 1985.

James B. McIntyre, Charleston, for appellants.

P. Thomas Krieger, Huntington, for appellee.

PER CURIAM:

This appeal, by way of certiorari,[1] is taken from a final order of the Circuit Court of Kanawha County, entered January 13, 1984, which denied the claims of the petitioners, Leslie H. Gordon, George S. Belcher and other similarly-situated employees of Ensign Electric Division, Harvey Hubbell, Inc. (hereinafter Ensign), for unemployment compensation benefits. The petitioners contend that the circuit court erred in reversing decisions of the Board of Review of the West Virginia Department of Employment Security which held that the petitioners were not disqualified from receiving benefits under the provisions of the Unemployment Compensation Law, W.Va. Code § 21A-1-1 *et seq.* (1985 Replacement Vol.). We agree, and we reverse the judgment of the circuit court.

1. W.Va.Code § 21A-7-27 (1985 Replacement Vol.) provides that in unemployment compensation cases, an appeal from a decision of the Circuit Court of Kanawha County may be taken to this Court by petition for a writ of certiorari.

This is the second time this case has been before this Court. In *Belt v. Cole*, 172 W.Va. 383, 305 S.E.2d 340 (1983), we held that the petitioners were not ineligible for unemployment compensation benefits merely because they were involved in a labor dispute. We remanded the case, however, for a determination of whether the petitioners were subject to W.Va.Code § 21A–6–3(4), which provides that an individual shall be disqualified from receiving benefits

> [f]or a week in which his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he was last employed, unless the commissioner is satisfied that he was not (one) participating, financing, or directly interested in such dispute, and (two) did not belong to a grade or class of workers who were participating, financing, or directly interested in the labor dispute which resulted in the stoppage of work. No disqualification under this subdivision shall be imposed if the employees are required to accept wages, hours or conditions of employment substantially less favorable than those prevailing for similar work in the locality, or if employees are denied the right of collective bargaining under generally prevailing conditions, or if an employer shuts down his plant or operation or dismisses his employees in order to force a wage reduction, changes in hours or working conditions.

The petitioners asserted that they were not disqualified under this section because the wages offered by Ensign were substantially less favorable than the prevailing wage for similar work in the locality.

The petitioners, all members of Local 5925 of the United Steelworkers of America, were employed by Ensign under a collective bargaining agreement which expired on September 30, 1978. Despite efforts at negotiating a new agreement, the union and Ensign were unable to come to terms, and on October 1, 1978, the petitioners went on strike.

The petitioners applied to the Department of Employment Security for unemployment compensation benefits, and, for reasons not germane to this appeal, the claims were divided into two groups. The claims were referred to Appeal Tribunals as labor disputes, and evidentiary hearings were conducted on October 25, 1978 and December 13, 1978.

At the hearings, the petitioners attempted to establish the prevailing wage by offering examples of the wages paid to certain employees by three other employers, ACF Industries, Connor Steel Co. and International Nickel Co., under collective bargaining agreements negotiated by the union. The petitioners' evidence showed that these employers paid employees classified as "welders" and "laborers" a standard hourly wage substantially higher than that offered by Ensign to similarly classified employees.[2] The petitioners also asserted that each of these companies offered incentive pay to its employees which Ensign did not, thus creating an even greater disparity in actual wages.

Ensign, on the other hand, asserted that its offer was comparable to or better than the wages paid by its competitors. Ensign offered no evidence as to the specific wages paid by such competitors or where their facilities were located, but did introduce into evidence collective bargaining agreements negotiated between the union and two other employers, Martin Steel, located in Huntington, and Acme Machinery, which provided a standard hourly wage for welders and laborers below or equal to that offered by Ensign.

Upon this evidence, the Appeal Tribunals concluded that the wages offered by Ensign were substantially less than the prevailing wage and ruled that the petitioners were not disqualified from receiving bene-

---

**2.** The evidence showed that the three companies paid welders between $7.54⁴/10 and $8.00 per hour and laborers between $5.41⁸/10 and $6.16 per hour. Ensign was shown to pay its welders $5.24 per hour and its laborers $4.49 per hour.

The petitioners asserted that at the time of the strike Ensign offered a $.15 per hour across the board raise in the first year of the contract and cost-of-living allowances every year thereafter.

 

fits. Ensign appealed to the Board of Review of the Department of Employment Security, which adopted the findings and conclusions of the Appeal Tribunals and affirmed. Ensign sought review in the Circuit Court of Kanawha County, and on remand of the case by this Court, the claims were consolidated for decision.

By memorandum opinion and order entered January 13, 1984, the circuit court reversed the decision of the Board of Review. The court concluded that the petitioners had failed, as a matter of law, to meet their burden of proof because they made no showing that the higher wage rates, which they cited as the prevailing wage, were for similar work. The court also noted that Ensign's offer fell within the pay range of the locality established by the collective bargaining agreements of the five other employers cited by the parties.

We are of the opinion that the circuit court erred in concluding that the petitioners failed to meet their burden of proof. The evidence showed that all five of the employers cited by the parties used the same or similar job classifications as Ensign under collective bargaining agreements negotiated by the same union which represented the petitioners. This evidence gave rise to an inference that the persons so classified were engaged in similar work. Ensign made no attempt to challenge this inference, and, in fact, relied on it in presenting its own evidence.

" 'Unemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof.' *Davis v. Hix,* 140 W.Va. 398, 84 S.E.2d 404 (1954), Syllabus Point 6." Syllabus Point 1, *Lee-Norse Co. v. Rutledge,* 170 W.Va. 162, 291 S.E.2d 477 (1982). Disqualification provisions are to be narrowly construed. *Bennett v. Hix,* 139 W.Va. 75, 79 S.E.2d 114 (1953). In view of the evidence in this case, we conclude that the circuit court erred in reversing the decision of the Board of Review.

For the reasons stated herein, the judgment of the Circuit Court of Kanawha County is reversed.

Reversed.