392 S.E.2d 204

David Allen ROBERTS

v.

Cathy S. GATSON, Clerk of the Circuit Court of Kanawha County; the Board of Review of the West Virginia Dept. of Employment Security; Richard E. Tyson, as Chairman; J.K. Chase, Jr., and C.C. Elmore, Jr., as Members; Adna Thomas as Commissioner; and PPG Industries, Inc.

No. 19359.

Supreme Court of Appeals of West Virginia.

Feb. 23, 1990.

Concurring and Dissenting Opinion by Justice McHUGH April 30, 1990.

Patrick S. Cassidy, O'Brien, Cassidy & Gallagher, L.C., Wheeling, G. Charles Hughes, G. Charles Hughes, L.C., Moundsville, for David Allen Roberts.

Larry W. Blalock, Al Anthony George, Jackson & Kelly, Charleston, for PPG Industries.

MILLER, Justice:

When the collective bargaining agreement (CBA) between PPG Industries, Inc. (PPG), and Local No. 45 of the International Chemical Workers' Union (Union) expired on August 31, 1986, approximately 600 employees went on strike. The employees filed timely applications for unemployment benefits, which were ultimately denied by the Board of Review of the West Virginia Department of Employment Secur-

ity. This denial was affirmed by the Circuit Court of Kanawha County. The employees appeal.

■ The parties do not dispute that the employees' eligibility for unemployment compensation benefits is controlled by W.Va.Code, 21A–6–3(4) (1984). This section disqualifies employees from receiving unemployment compensation benefits if they are involved in "a work stoppage incident to a labor dispute," unless they can satisfy one of three statutory exceptions: (1) the employees are "required to accept wages, hours or conditions of employment substantially less favorable than those prevailing for similar work in the locality"; (2) the employees "are denied the right of collective bargaining under generally prevailing conditions"; or (3) "an employer shuts down his plant or operation or dismisses his employees in order to force wage reduction, changes in hours or working conditions." [1]

The controversy in this case is whether the employees meet either of the first two exceptions. The employees assert that the contract terms offered by PPG at the expiration of the CBA were less favorable than the old contract terms, and were substantially less favorable than those prevailing for similar work in the locality. The employees further allege that PPG denied them their right to collective bargaining under generally prevailing conditions. We first address the latter claim.

## I.

### DENIAL OF COLLECTIVE BARGAINING

#### A. *General Guidelines*

■ We observe initially that the parties are unable to present any decision by this Court which explains the meaning of the phrase "denied the right of collective bargaining under generally prevailing conditions" contained in W.Va.Code, 21A–6–3(4). The Union argues that we should consider certain unfair labor practice charges that were filed under Section 8(a)(5) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(5) (1974). This provision makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees[.]" PPG responds that there was no outright refusal to bargain. It also asserts that the Union's filing of several unfair labor practices against PPG involving isolated issues does not constitute a denial of collective bargaining under W.Va.Code, 21A–6–3(4).

In the past, we have looked to the federal courts' interpretation of the NLRA for guidance in defining the statutory terminology in our unemployment compensation statute. We find the federal courts' interpretation of the NLRA useful in defining terms in our unemployment act because our statute is designed to provide coverage for workers who are fired as a result of a labor dispute and who also meet certain standards. Our act, by using the phrase "denied the right of collective bargaining," invites an obvious reference to federal labor law provisions concerning the duty to bargain collectively and the failure to do so.

In *Miners in Gen. Group v. Hix*, 123 W.Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds, Lee–Norse Co. v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477 (1982), we construed the term "labor dispute" in our state unemployment compensation statute by looking at its definition in the NLRA

---

**1.** The relevant portion of W.Va.Code, 21A–6–3(4) states:

"Upon the determination of the facts by the commissioner, an individual shall be disqualified for benefits:

\* \* \* \* \* \*

(4) For a week in which his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he was last employed.... No disquali-

fication under this subdivision shall be imposed if the employees are required to accept wages, hours or conditions of employment substantially less favorable than those prevailing for similar work in the locality, or if employees are denied the right of collective bargaining under generally prevailing conditions, or if an employer shuts down his plant or operation or dismisses his employees in order to force wage reduction, changes in hours or working conditions."

and the Norris–LaGuardia Act.[2] As we explained in *Hix*, 123 W.Va. at 646, 17 S.E.2d at 815:

> "We are not bound by the definition of a labor dispute contained in the Federal statutes, but these definitions are at least persuasive of what should be the definition of such a dispute, and are not out of line with the general and common acceptation of the meaning of the term. Until a better definition is found, or there is some substantial reason for a finding that our legislature had in mind a different meaning to be attached thereto, there would seem to be no impropriety in our accepting these existing definitions in the determination of what was then meant."

Other jurisdictions have also adopted the definitions contained in a federal labor statute when construing a provision of an unemployment compensation statute, particularly where the term "labor dispute" is used and has not been defined in the statute. *E.g., Adams v. District Unemployment Compensation Bd.,* 414 A.2d 830 (D.C.App.1980); *Inter–Island Resorts, Ltd. v. Akahane,* 46 Haw. 140, 377 P.2d 715 (1962); *Dallas Fuel Co. v. Horne,* 230 Iowa 1148, 300 N.W. 303 (1941); *Johnson v. Kentucky Unemployment Ins. Comm'n,* 367 S.W.2d 253 (Ky.1963). *Cf. Campos v. California Employment Dev. Dep't,* 132 Cal.App.3d 961, 183 Cal.Rptr. 637 (1982) (Department of Labor's interpretation of phrase "new work" in federal unemployment tax statute is entitled to great weight by state court interpreting same terms in state unemployment compensation statute);

*Adkins v. Indiana Employment Sec. Div.,* 117 Ind.App. 132, 70 N.E.2d 31 (1946) (when defining term "labor dispute" in unemployment compensation statute, court will give term the same meaning as is defined in state anti-injunction act). *See* Annot., 63 A.L.R.3d 88 § 6 (1975 & Supp. 1989).

Thus, we believe it is appropriate for this Court to look to the NLRA for guidance in interpreting the phrase "denied the right of collective bargaining" contained in W.Va.Code, 21A–6–3(4). Under Section 8(d) of the NLRA, 29 U.S.C. § 158(d), "to bargain collectively" is defined as follows:

> "For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession[.]"

In determining whether an unlawful refusal to bargain has occurred, the federal courts usually probe the conduct of the parties for evidence of the presence or absence of "good faith."[3] In *Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.,* 404

---

**2.** The NLRA, 29 U.S.C. § 152(9) (1974), defines a labor dispute as follows:

> "The term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee."

The parties agree that the controversy involved in this case is due to a stoppage of work which exists because of a labor dispute.

**3.** In these situations, courts examine all of the circumstances without particular reference to any single act of the employer, i.e., does the pattern of conduct show that one party is in truth seeking to frustrate the agreement, attempting to disrupt negotiations, or trying to oust the other party of a "partnership" in determining wages and working conditions. *Union Steelworkers of Am. v. N.L.R.B.,* 363 F.2d 272 (D.C.Cir.1966), *cert. denied,* 385 U.S. 1036, 87 S.Ct. 778, 17 L.Ed.2d 683 (1967); *Firch Baking Co. v. N.L.R.B.,* 479 F.2d 732 (2d Cir.), *cert. denied,* 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973); *General Elec. Co. v. N.L.R.B.,* 418 F.2d 736 (2d Cir.1969), *cert. denied,* 397 U.S. 965, 90 S.Ct. 995, 25 L.Ed.2d 257 (1970); *Arnold Graphics Indus., Inc. v. N.L.R.B.,* 505 F.2d 257 (6th Cir.1974).

U.S. 157, 178, 92 S.Ct. 383, 397, 30 L.Ed.2d 341, 357 (1971), the United States Supreme Court spoke to the mandatory bargaining subjects referred to in Section 8(d) of the NLRA:

> "Section 8(d) of the Act, of course, does not immutably fix a list of subjects for mandatory bargaining.... But it does establish a limitation against which proposed topics must be measured. In general terms, the limitation includes only issues that settle an aspect of the relationship between the employer and employees.... Although normally matters involving individuals outside the employment relationship do not fall within that category, they are not wholly excluded." (Citations omitted).

*Allied Chemical* also recognized that a refusal to bargain on those mandatory subjects embraced within Section 8(d) will provide the basis for an unfair labor practice under Section (a)(5) of the NLRA which "provides that it is an unfair labor practice for an employer to refuse to bargain collectively with the representative of his employees[.]" 404 U.S. at 163, 92 S.Ct. at 389, 30 L.Ed.2d ·at 348.[4]

While it is true that a refusal to bargain on some issues involving wages, hours, and conditions of employment may result in an unfair labor practice, this does not mean that every unfair labor practice constitutes a denial of the right of collective bargaining under W.Va.Code, 21A–6–3(4).[5]

Under the federal labor law, there have evolved what are termed *per se* violations of the duty to bargain collectively in good faith. This type of violation is considered so egregious that the offending party will rarely, if ever, be ·permitted to escape an unfair labor practice charge by attempting to excuse or justify its conduct. The United States Supreme Court, in *N.L.R.B. v. Katz*, 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230, 236 (1962), identified two such violations and indicated that the question of good faith was not relevant:

> "The duty 'to bargain collectively' enjoined by § 8(a)(5) is defined by § 8(d) as the duty to 'meet * * * and confer in good faith with respect to wages, hours, and other terms and conditions of employment.' Clearly, the duty thus defined may be violated without a general failure of subjective good faith; for there is no occasion to consider the issue of good faith if a party has refused even to negotiate *in fact*—'to meet * * * and confer'—about any of the mandatory subjects.... We hold that an employer's unilateral change in conditions of employment under negotiation is similarly a violation of § 8(a)(5), for it is a circumvention of the duty to negotiate which frustrates the objectives of § 8(a)(5) much as does a flat refusal."

---

**4.** Courts have identified a wide variety of topics as constituting conditions of employment and, therefore, subjects of collective bargaining. *See Fibreboard Paper Prods. Corp. v. N.L.R.B.,* 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964) (contracting out work); *N.L.R.B. v. Katz,* 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962) (sick leave and merit pay increases); *Oil, Chem. & Atomic Workers Local Union No. 6–418 v. N.L.R.B.,* 711 F.2d 348 (D.C.Cir.1983) (health and safety information); *United Elec., Radio and Mach. Workers of Am. v. N.L.R.B.,* 409 F.2d 150 (D.C.Cir.1969) (no-strike clause); *Connecticut Light & Power Co. v. N.L.R.B.,* 476 F.2d 1079 (2d Cir.1973) (group health insurance); *Alfred M. Lewis, Inc. v. N.L.R.B.,* 587 F.2d 403 (9th Cir.1978) (production quota systems and disciplinary sanctions).

**5.** PPG appears to argue that if we attempt to determine whether a failure to bargain has occurred under our employment security statutes by reference to whether an unfair labor practice has been committed, we would be pre-empted from doing so under the principles announced in *New York Tel. Co. v. New York State Dep't of Labor,* 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979). This case holds that a state is not precluded by the doctrine of federal labor law pre-emption from authorizing the payment of unemployment compensation benefits to persons while they are out of work on strike.

We find nothing in this case which prevents us or the state unemployment agency from referring to the federal labor law to determine whether there is either a failure to bargain collectively or to determine if unfair labor practices rise to this level. Such an examination would, of course, have no effect on nor constitute an adjudication of the parties' rights under federal labor law. The examination would merely mean that the federal labor law has been utilized as a guideline for purposes of our unemployment compensation statute.

(Emphasis in original; footnotes omitted).

■ Thus, under *Katz*, the refusal to bargain at all is a *per se* violation, as is a unilateral change in conditions of employment.[6] Moreover, *Katz* also identifies the refusal to bargain over any mandatory subject of collective bargaining as a *per se* violation of the act:

> "A refusal to negotiate *in fact* as to any subject which is within § 8(d), and about which the union seeks to negotiate, violates § 8(a)(5) though the employer has every desire to reach agreement with the union upon an over-all collective agreement and earnestly and in all good faith bargains to that end." 369 U.S. at 743, 8 L.Ed.2d at 236, 82 S.Ct. at 1111. (Emphasis in original).

In *N.L.R.B. v. Strong*, 393 U.S. 357, 89 S.Ct. 541, 21 L.Ed.2d 546 (1969), the Supreme Court found that the company's failure to sign a written document embodying the negotiated collective bargaining agreement was also a *per se* violation. *See generally* 1 C. Morris, *The Developing Labor Law* 562–70 (2d ed. 1983); 48 Am. Jur.2d *Labor and Labor Relations* § 1042 (1979 & Supp.1989).

In addition to the aforementioned conduct, the United States Supreme Court has recognized that, under Section 8(a)(5) of the NLRA, there is a duty to disclose relevant information necessary to accomplish collective bargaining. This duty was discussed in *N.L.R.B. v. Truitt Mfg. Co.*, 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027 (1956), where the employer maintained it could not afford to give its employees pay raises. The union requested the company to provide its financial records substantiating the company's poor economic condition.

The employer refused to turn over the information, and the union filed an unfair labor practice charge with the NLRB. The NLRB found that the company had failed to bargain in good faith. The Supreme Court found that the wage issue was highly relevant to collective bargaining and that "a refusal to attempt to substantiate a claim of inability to pay increased wages may support a finding of a failure to bargain in good faith." 351 U.S. at 153, 76 S.Ct. at 756, 100 L.Ed. at 1032.

Following *Truitt*, cases involving unfair labor practice charges resulting from failure to turn over information have looked to several factors. These factors include the relevancy of the information sought (i.e., the information pertains to a mandatory topic of bargaining) and whether there is a reasonable basis asserted for nondisclosure (i.e., production would be unduly burdensome or violate confidentiality). *See generally* 1 C. Morris, *supra* at 610–17; 48 Am. Jur.2d, *supra* §§ 1044–1069.

This cursory survey of the federal labor law is not designed to describe it in any detail, but only outlines some general principles and identifies severe violations of the duty to bargain in good faith. At best, it provides guidance for this Court's determination of what constitutes a denial of the right of collective bargaining under W.Va. Code, 21A–6–3(4). We have no doubt that a more detailed definition will evolve as the facts of each individual case are examined.

■ From the foregoing, we extract the following general principles that define a denial of the right of collective bargaining under W.Va.Code, 21A–6–3(4).[7] First, a refusal to engage in the collective bargaining process or to negotiate on those mandatory subjects that traditionally form the basis of the collective bargaining agreement so frustrates the process as to constitute a denial of the right. Second, a refusal to sign a written agreement which has been duly negotiated would constitute a denial, because such refusal is a negation of the bargaining process.

On the other hand, although the duty to bargain collectively also entails the duty to

---

6. There are some recognized exceptions to the unilateral change doctrine. *See generally* 2 C. Morris, *The Developing Labor Law* 597–600 (2d ed. 1983); 48 Am.Jur.2d *Labor and Labor Relations* §§ 1073–1100 (1979).

7. The statutory language speaks of being "denied the right of collective bargaining under generally prevailing conditions." The parties do not address, nor do we, the meaning of the phrase "under generally prevailing conditions."

exchange relevant information, we do not conceive that every rejected demand for information will constitute a denial of the right of collective bargaining under our unemployment compensation statute. As we have earlier indicated, not every event that may constitute a federal unfair labor practice will constitute a denial of the right of collective bargaining under W.Va.Code, 21A-6-3(4). Furthermore, the employer may be found to have bona fide reasons for nondisclosure, such as relevance, necessity, or unavailability.

We believe that for purposes of constituting a denial of the right of collective bargaining under W.Va.Code, 21A-6-3(4), the failure to furnish requested information must be shown to relate to a mandatory subject of collective bargaining. Moreover, the information requested must be so essential that the collective bargaining process will be frustrated without it. Finally, it is appropriate to consider whether the employer has a bona fide reason for the failure to disclose.

It is obvious that these general principles are substantially different from the ordinary inquiry that is made under federal labor law in order to find an unfair labor practice based on the duty to bargain collectively. Under our unemployment compensation statute, the test is not whether the employer may have committed an unfair labor practice, but whether his actions amounted to the denial of the right of collective bargaining.

### B. *Application*

With these general guidelines in mind, we proceed to examine the particular facts of this case. The Union does not claim that there was a complete failure to bargain in good faith. The Union's claim centers on several unfair labor practice charges it filed against PPG, which it contends were sufficiently egregious to undermine the collective bargaining process.

During negotiations, the Union requested that PPG provide it with information concerning a proposed increase to the company's health care plan. PPG had offered to increase the cap on the major medical benefits coverage from $200,000 to $225,000. The request asked how much existing total medical care had been paid to individual employees and their dependents.[8]

PPG initially resisted this request as unduly burdensome and as violating individual employees' rights of confidentiality. Later, it advised that this information was in the hands of its medical insurer, Equitable Insurance Company (Equitable). Although PPG requested Equitable to compile the information, Equitable had not provided the information to PPG at the time of the unemployment compensation hearing. The Union filed an unfair labor practice charge on the theory that the company was violating its obligation to bargain in good faith by not timely supplying this information.[9]

The Union knew the details of the cap's formula; it simply did not know its precise impact on each individual worker. While a health care plan may be a mandatory bargaining item, we do not believe the information sought was so essential that the entire bargaining process was frustrated without it. Therefore, the failure to provide this information cannot be termed a denial of the collective bargaining process under W.Va.Code, 21A-6-3(4).

The Union filed two other unfair labor practice charges. The first alleged that PPG had unilaterally altered the employee pension agreement. The regional director of the NLRB refused to issue a formal complaint on this charge. The second complaint related to a drug testing practice unilaterally initiated by PPG under the old CBA. This charge was ultimately deferred by the NLRB for arbitration. Both issues occurred under the old CBA. In order to constitute a denial of collective bargaining under W.Va.Code, 21A-6-3(4), the events complained of ordinarily must be connected

---

8. Specifically, in a letter dated April 15, 1986, the Union made the following request: "Provide a list of employees and dependents who have used Major Medical benefits, with the amount used by each one."

9. The district director of the NLRB issued a complaint on this charge, and it was ultimately settled by the parties.

with the collective bargaining negotiations. It is the denial of collective bargaining that is the key inquiry, and, consequently, the correct focus is on the employer's activity with regard to bargaining over the new agreement.

We, therefore, conclude that there was no denial of the right of collective bargaining under W.Va.Code, 21A–6–3(4).

## II.

### SUBSTANTIALLY LESS FAVORABLE CONDITIONS

W.Va.Code, 21A–6–3(4), allows employees to obtain unemployment compensation benefits during a work stoppage if the employees are forced "to accept wages, hours or conditions of employment substantially less favorable than those prevailing for similar work in the locality."

Both parties submitted evidence on this issue. PPG used the wage, hour, and working condition data from its old CBA, and compared this information with the wages and fringe benefits of five other chemical plants in and around the Ohio River Valley. The Union compared the company's last offer before the old contract expired with the wages of a single nearby chemical plant, Mobay Chemical Company. The Union also compared wages paid by PPG in 1985 with a 1985 statewide survey of the average weekly wage paid to workers in the "chemical and allied products industry." [10]

■ We do not have any specific authority as to what comparison should be made to determine whether the employees are required to accept substantially less favorable wages than those prevailing for similar work in the locality. In Gordon v. Rutledge, 175 W.Va. 683, 337 S.E.2d 920 (1985), without any discussion, we compared the company's last offer before the CBA expired with the prevailing local wages. Logic dictates that the company's

last offer before the work stoppage is the relevant starting point for determining if the employees are required to accept wages, hours, and conditions of employment substantially less favorable than those prevailing for similar work in the locality under W.Va.Code, 21A–6–3(4). Ordinarily, it will be from this offer that the employees will determine whether to accept the contract or to assert legitimate economic pressure on the employer by striking for higher benefits.

■ While the Union correctly began its comparison by using the last offer before the work stoppage, it compared the company's final offer with only one other chemical company in the area, Mobay Chemical Company. W.Va.Code, 21A–6–3(4), clearly suggests a broader inquiry be made by using the phrase "wages, hours or conditions of employment substantially less favorable than those prevailing for similar work in the locality." Common sense dictates that where there are several similar places of employment in the locality, their wages, hours, and conditions of employment should all be compared to determine if the last offer is substantially less favorable.

Our earlier cases reflect a factual record of such comparisons even though we did not precisely state such a comparison was required. E.g., Gordon v. Rutledge, supra; Pennington v. Cole, 175 W.Va. 362, 336 S.E.2d 210 (1985). There is no disagreement that there were similar chemical companies, e.g., American Cyanamid, Linden Chemical, and Union Carbide, in the locality. Thus, the Union's wage comparison was flawed as it only compared the company's last offer to that of Mobay Chemical Company rather than to all of the local chemical companies. [11]

The record before us does disclose the company's last offer with regard to various wage levels and also reveals the wages

---

**10.** This survey is compiled annually by the West Virginia Department of Employment Security.

**11.** We do not believe that a statewide wage average in a given industry should be utilized for comparison where there is an adequate group of similar companies in the locality.

being paid by the surrounding chemical companies for similar job positions.[12] This comparison demonstrates that the last wage levels offered by PPG were, except for the minimum hiring wage, above the average wages paid by the other chemical companies. There were a total of eighteen different wage levels in the proposed contract.

We do not believe that where there is a wage proposal covering a variety of different wage levels, the entire wage package fails because one wage level is less than the average of the surrounding prevailing wage levels. The statute requires "wages ... *substantially* less favorable." (Emphasis added). Here, there is no showing that PPG's proposed pay

---

**12.** The record contains the following chart:

| | American Cyanamid | Linden Chemicals | PPG Industries (Proposed) | Mobay Chemicals | Union Carbide | Average |
|---|---|---|---|---|---|---|
| Minimum Hiring Rate | 10.16 | 13.77 | 9.00 | 14.19 | 9.00 | 11.22 |
| Instrument Mech. | 12.28 | 14.89 | 14.94 | 16.59 | 14.40 | 14.62 |
| Electrician | 12.28 | 14.89 | 14.94 | 16.59 | 14.40 | 14.62 |
| Machinist | 12.28 | 14.89 | 14.94 | 16.59 | 14.40 | 14.62 |
| Millwright General Repairman | 12.28 | 14.82 | 14.87 | 16.59 | 14.40 | 14.59 |
| Welder | 12.28 | 14.89 | 14.87 | 16.59 | 14.40 | 14.61 |
| Pipefitter | 12.28 | - | 14.87 | 16.59 | 14.40 | 14.54 |
| Painter | 12.15 | 14.82 | 14.39"A" 16.63"B" | | | 13.75 |
| Insulator | 12.28 | Combined w/Painter | 14.39 | 16.59 | 14.40 | 14.50 |
| Truck Driver | 11.06 | | 13.50 | 16.16 | 13.56 | 11.07 |
| Sheet Metal | 12.28 | | | 16.59 | | 14.44 |
| Top Production | 12.21 | 14.57 | 14.75 | 16.44 | 14.40 | 14.47 |
| Next Production (Most Common) | 11.83 | 14.28 | 14.13 | 16.24 | | 14.12 |
| Top Power House | 12.28 | 14.70 | 14.75 | 16.47 | | 14.55 |
| Next Power House | 11.93 | | 14.34 | | | 13.14 |
| Top Coal Handler | 10.83 | | 14.75 | | | 12.79 |
| Lift Truck Operator | 11.06 | | | | | 11.06 |
| Warehouseman "A" | | | | | 13.99 | 13.99 |
| Warehouseman "B" | | | | | 13.71 | 13.71 |
| Shipping/ Receiving | 11.06 | 14.49 | 14.12 | 16.22 | 13.71 | 13.92 |
| Stores Attendant | 11.06 | Salary | 13.46 | Salary | 14.01 | 12.84 |
| Laborer | 10.16 | 13.80 | 13.01 | 15.97 Bid | 11.45 | 12.88 |
| Entry Level | | | | 14.19 Bid | | 14.19 |
| Janitor | 10.16 | | 13.01 | 16.22 | Those current on 7/16/84—$12.80. On Job After 7/16/87 $11.45 | 12.88 |

While the Union objected to PPG's list of wages paid by other local chemical companies, it did not object on the basis that the list was inaccurate or that these companies did not have "similar work," as required by W.Va.Code, 21A–6–3(4). Rather, the objection was based on the claim that PPG's personnel director had no first-hand knowledge of these wage levels. At the administrative hearing, the personnel director offered to introduce the collective bargaining agreements of the four companies he had compared with PPG, but the Union felt this was unnecessary. Under these circumstances, we do not believe the Union's objection was well founded. Furthermore, strict rules of evidence are not applicable to unemployment compensation hearing cases. W.Va.Code, 21A–7–13(4) (1939).

**774**

scale was substantially less favorable. Consequently, we affirm the judgment of the circuit court on this point.

### III.

### DUE PROCESS CLAIM

▉▉▉▉ The Union's due process claim arises in this fashion. The Appeal Tribunal, as the initial factfinder, decided the case only on the collective bargaining issue.[13] On appeal, the Board of Review (Board) reversed the Appeal Tribunal on this issue and remanded the case for a decision on the wage issue. Inasmuch as the record was already fully developed, the Appeal Tribunal took no additional evidence. The Appeal Tribunal heard oral arguments, accepted briefs on this issue, and rendered an addendum opinion which it sent directly to the Board. The Board did not set the matter for oral argument, but instead issued its final order finding the employees disqualified from receiving benefits.

The Union's argument on appeal is that it should have had the opportunity to be heard by the Board after it received the Appeal Tribunal's addendum opinion and before the Board issued a final order. Both the Board's and the Appeal Tribunal's orders were based on a developed factual record and briefs in which the Union had participated.

The Board's failure to permit further arguments, if it had a duty to do so under the facts of this case, can hardly be deemed a violation of due process. We have held that not every procedural irregularity at an unemployment administrative hearing will result in due process error. *Walker v. Gatson,* 179 W.Va. 530, 532, 370 S.E.2d 725, 727 (1988). Furthermore, judicial review was accorded and obtained in the circuit court on these precise issues. We find no merit in this claim.

**13.** In *Belt v. Rutledge,* 175 W.Va. 28, 330 S.E.2d 837 (1985), we outlined in some detail the statutory procedure in labor dispute cases under the unemployment compensation law. The initial evidentiary hearing is held before an Appeal

### IV.

For the reasons stated herein, we affirm the decision of the Circuit Court of Kanawha County.

Affirmed.

McHUGH, Justice, concurring, in part, and dissenting, in part:

The majority opinion sets forth sound legal principles. Therefore, I concur in the syllabus points set forth therein. I believe, however, that the majority opinion erroneously applied syllabus points 6 and 7 to the facts of this case. Thus, I dissent to that portion of the opinion which concludes that the employees were not required to accept *wages substantially less favorable* than those *prevailing* for similar work in the locality, and, therefore, they were disqualified from receiving unemployment compensation benefits.

This case presents this Court with an opportunity, for the first time, to sharpen the focus of *W.Va.Code,* 21A–6–3, as amended, relating to the disqualification for benefits section of the West Virginia Unemployment Compensation statute. Specifically, *W.Va.Code,* 21A–6–3(4), as amended, the section relating to disqualification of benefits for stoppage of work because of a labor dispute is the provision in question. That section, as related to this case, provides, in part, that no disqualification shall be imposed (1) if the employees are "required to accept wages, hours or conditions of employment substantially less favorable than those prevailing for similar work in the locality" or (2) if employees are "denied the right of collective bargaining under generally prevailing conditions[.]"

As noted, however, my primary concern with the majority opinion lies with its interpretation of the language "wages … substantially less favorable than those prevailing for similar work in the locality[.]"

Tribunal. Its decision can then be appealed to the Board of Review, which "has the authority to 'affirm, *modify* or reverse and set aside' the decision. W.Va.Code, 21A–7–10." 175 W.Va. at 30, 330 S.E.2d at 839. (Emphasis added).

The following language of the majority opinion raises some unsettling questions and will, no doubt, require additional cases to resolve those questions. "We do not believe that where there is a wage proposal covering a variety of different wage levels, because one wage level is less than the *average* of the surrounding prevailing wage levels, the entire wage package fails. The statute requires 'wages ... substantially less favorable.'" (emphasis added) Although that language does not appear in a syllabus point, it is the central point of my dissent because that interpretation may adversely influence future collective bargaining processes.

Some fundamental principles bear repeating to keep the resolution of the issue in perspective. Syllabus point 1 of *Lee–Norse Co. v. Rutledge,* 170 W.Va. 162, 291 S.E.2d 477 (1982), quotes syllabus point 6 of *Davis v. Hix,* 140 W.Va. 398, 84 S.E.2d 404 (1954): "'Unemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof.'" That elementary principle has been repeated many times by this Court. *See* syl., *Gordon v. Rutledge,* 175 W.Va. 683, 337 S.E.2d 920 (1985); syl., *Pennington v. Cole,* 175 W.Va. 562, 336 S.E.2d 210 (1985); *Belt v. Cole,* 172 W.Va. 383, 385, 305 S.E.2d 340, 342 (1983).

Disqualification provisions of unemployment compensation statutes are to be narrowly construed. *Gordon v. Rutledge,* 175 W.Va. 683, 684, 337 S.E.2d 920, 922 (1985); *Bennett v. Hix,* 139 W.Va. 75, 84, 79 S.E.2d 114, 119 (1953).

Given the liberal construction as a whole of the statute and the narrow construction of the disqualification provisions of the statute, I believe that the majority opinion has, in this opinion, rechanneled the direction of the statute.

*W.Va.Code,* 21A–6–3(4), as amended, does not use the term "average" in referring to wages "substantially less favorable."

Although the majority resolved the issue in this case, I fear the "averaging" concept adopted by the majority in the case will result in serious points of dispute between employees and employers. Within a factory, as in this case, there are employees at several different wage levels. Those wage levels doubtless reflect the skill required in each job. The higher the skill, the more the pay. Also, generally the higher the skill, the more the demand. Employees have the right to bargain for prevailing wages in each of those levels. The language used, however, in the opinion will cause confusion because of the possibility of differing interpretations that may be placed on it. For example, in this case, there were eighteen wage levels. What if there was agreement on ten, but not on the other eight. Would employees be compelled to accept the ten and forget the eight? How many wage levels must be less than the average? More importantly, averaging is not the requirement of the statute. Employees have the right to seek "prevailing" wages, not "average prevailing" wages. Does "average prevailing" wages suggest that the current level of wages paid by the employer in question is to be considered in calculating the prevailing wage rate? I reiterate my concern that employees will be forced to accept wage packages that are unsatisfactory lest they risk losing unemployment compensation benefits.

I do not believe the legislature intended such a result. In fact, such an interpretation may slow labor negotiations for fear of getting caught in the "average" net.

Therefore, although I concur with the majority opinion in its syllabus points, and respect the quality of legal research by the majority writer, I dissent to what I believe is a flaw in the majority opinion.