465 S.E.2d 873

Cecil **SMITTLE**, Carl Yentser, Donald L. Henry, James E. Hoffman, James M. Birch, John Keller, Johnnie L. Smith, Joseph W. Dawson, Robert W. Aston and Thomas E. Gump, Petitioners Below, Petitioners,

v.

Cathy S. **GATSON**, Clerk of the Circuit Court of Kanawha County; The Board of Review of the West Virginia Department of Employment Security; and Contractors Supply, Inc., Respondents Below, Respondents.

No. 22912.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 12, 1995.

Decided Dec. 8, 1995.

**420**

Timothy F. Cogan, Cassidy, Myers, Cogan and Voegelin, LC, Wheeling, for Petitioners.

James F. Companion, Yolanda G. Lambert, Schrader, Byrd, Companion & Gurley, Wheeling, for Contractors Supply, Inc.

McHUGH, Chief Justice:

This unemployment security appeal concerns the denial of benefits to certain employees[1] of Contractors Supply, Inc. ("Contractors") based on a finding that "a stoppage of work ... exists because of a labor dispute" and that none of the statutory exceptions applies.[2] The employees maintain that they are entitled to benefits because Contractors locked them out by refusing to operate under the expiring contract in an attempt to force a wage reduc-

tion. After the Circuit Court of Kanawha County upheld the decision of the Board of Review of the West Virginia Department of Employment Security denying benefits, the employees appealed to this Court. Because *W.Va.Code*, 21A–6–3(4) [1990] permits the award of unemployment benefits when an "employer shuts down his plant or operation or dismisses his employees in order to force [a] wage reduction," we find the employees are entitled to benefits and reverse the decision of the circuit court.

## I.

### *Facts and Background*

The employees are represented by United Brotherhood of Teamsters, Local 697, and between May 1, 1989 and March 31, 1992, a collective bargaining agreement specified the terms and conditions of their employment. Before the expiration of the 1989–92 agreement, attempts by the employees and Contractors to reach an agreement were unsuccessful, and on April 1, 1992, work at Contractors' ready-mix concrete unit stopped. Both parties maintain that the other is responsible for the stoppage. The employees, emphasizing their willingness to continue working under the expiring agreement, characterize the stoppage as a lockout. The employer, claiming that wage reductions are necessary because the employees' union granted wage concessions to a competitor, characterizes the stoppage as a strike.

Upon evidence presented at two hearings, the Board of Review found Contractors' wage package was "substantially equal to or better than the wages and fringe benefits

---

1. Because Mr. Smittle was the first named petitioner in the Board of Review's proceeding, his name remains as a petitioner even though he was granted benefits based on a determination that he and several other original petitioners were laid off because of a lack of business before the expiration of the collective bargaining agreement.

2. This appeal comes to this Court on a writ of certiorari. *W.Va.Code*, 21A–7–27 [1970] states:

"The appeal from the decision of the circuit [court] of Kanawha county may be taken to the supreme court of appeals if a proper petition for certiorari is filed within sixty days of the date of the final decision of the circuit court of Kanawha county. The cases shall go from the circuit court of Kanawha county only on writ of certiorari and need be heard only at the session of the supreme court."

which were paid by the employer's primary competitors, some of which also had collective bargaining agreements with the union." Although one local company's employees did receive wages and fringe benefits substantially higher than those offered by Contractors, the Board weighed that evidence against the evidence that the employees of other local employers "earn no more than or less than the claimants here." The Board also found that the employees presented no evidence in support of their claim that they were "denied the right of collective bargaining under generally prevailing conditions." Based on these determinations, the Board denied the employees benefits.

Although the petitioners, who were not represented by counsel until their appeal to the circuit court, did not specifically argue before the Board that a employer shutdown caused the work stoppage, they presented evidence showing their offer to continue working under the expiring contract, the employer's refusal to allow work to continue under the expiring contract and the employer's counter-offer of reduced wages. Contractors agrees and stated in its brief that "Contractors does not dispute that its employees were willing to work under the old contract until a new agreement was reached, but the old contract was the problem." During the hearings before the Board of Review, the employer agreed that in the company's offer, "the hourly wage was less" than the expiring contract. However, the Board of Review concluded that no evidence was presented on the employer shutdown issue, and the Board's denial of benefits was upheld by the circuit court, which found the work stoppage to be a strike and did not specifically address the employer shutdown issue.

## II.

### Discussion

The parties agree that W.Va.Code, 21A–6–3(4) [1990] controls the determination of unemployment benefits in this case. W.Va. Code, 21A–6–3(4) [1990] states, in pertinent part:

For a week in which his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he was last employed, unless the commissioner is satisfied that he (1) was not participating, financing, or directly interested in such dispute, and (2) did not belong to a grade or class of workers who were participating, financing or directly interested in the labor dispute which resulted in the stoppage of work. No disqualification under this subdivision shall be imposed if the employees are required to accept wages, hours or conditions of employment substantially less favorable than those prevailing for similar work in the locality, or if employees are denied the right of collective bargaining under generally prevailing conditions, or if any employer shuts down his plant or operation or dismisses his employees in order to force wage reduction, changes in hours or working conditions.

■ *Roberts v. Gatson,* 182 W.Va. 764, 392 S.E.2d 204 (1990), our most recent examination of *W.Va.Code,* 21A–6–3(4), began by examining disqualification provisions and the three exceptions thereto, which provide for the payment of benefits in certain circumstances. Syl. pt. 1 of *Roberts v. Gatson* states:

W.Va.Code, 21A–6–3(4) (1984), disqualifies employees from receiving unemployment compensation benefits if they are involved in 'a work stoppage incident to a labor dispute,' unless they can satisfy one of three statutory exceptions: (1) the employees are 'required to accept wages, hours or conditions of employment substantially less favorable than those prevailing for similar work in the locality'; (2) the employees 'are denied the right of collective bargaining under generally prevailing conditions'; or (3) 'an employer shuts down his plant or operation or dismisses his employees in order to force wage reduction, changes in hours or working conditions.'

For ease of reference in this case, we will refer to the first exception noted in *W.Va.*

*Code,* 21A–6–3(4) [1990] as the "less than prevailing wages" exception; the second, as the "denial of the right of collective bargaining" exception; and, the third, as the "employer shutdown" exception.[3] The focus in *Roberts v. Gatson* was on the less than prevailing wages and the denial of the right of collective bargaining exceptions. Except for noting the statute provided a third exception, namely the employer shutdown exception, *Roberts v. Gatson* did not deal with the employer shutdown exception.

The controversy in this case is whether any of the statutory exceptions apply. The employees, asserting that all the exceptions apply, allege the following: (1) The terms offered by Contractors were substantially less favorable than those prevailing for similar work in the area (the less than prevailing wages exception); (2) The employees were denied the right of collective bargaining because Contractors refused to bargain timely and to allow the employees to inspect the company books (the denial of the right of collective bargaining exception); and (3) Contractors shut down its ready-mix contract unit in order to force a wage reduction when the employees offered to continue to work under the expiring contract (the employer shutdown exception). Contractors denies the employees' allegations and maintains that the employees' union entered a contract with a competitor, which lowered the local industry's wages and which Contractors is ready to accept for its wage package.

█ In resolving controversies concerning the interpretation of the unemployment compensation statutes, we have traditionally considered their remedial nature and have applied a liberal construction. Our traditional approach was stated in Syl. pt. 6, *Davis v. Hix,* 140 W.Va. 398, 84 S.E.2d 404 (1954), which provides: "Unemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof." *Accord* syl. pt. 2, *Davis v. Gatson,* 195 W.Va. 143, 464 S.E.2d 785 (1995); *Adkins v. Gatson,* 192 W.Va. 561, 564, 453 S.E.2d 395, 398 (1994); *Davenport v. Gatson,* 192 W.Va. 117, 119 n. 8, 451 S.E.2d 57, 59 n. 8 (1994); syl. pt. 1, *Lee–Norse Co. v. Rutledge,* 170 W.Va. 162, 291 S.E.2d 477 (1982); syllabus, *Gordon v. Rutledge,* 175 W.Va. 683, 337 S.E.2d 920 (1985) *(per curiam);* syllabus., *Pennington v. Cole,* 175 W.Va. 562, 336 S.E.2d 210 (1985); *Belt v. Cole,* 172 W.Va. 383, 385, 305 S.E.2d 340, 342 (1983). Our liberal construction reflects the purpose of our State's unemployment compensation laws, which as stated in *W.Va.Code,* 21A–1–1 [1978] "is to provide reasonable and effective means for the promotion of social and economic security by reducing as far as practicable the hazards of unemployment[,]" so as to:

(1) Provide a measure of security to the families of unemployed persons.

(2) Guard against the menace to health, morals and welfare arising from unemployment.

(3) Maintain as great purchasing power as possible, with a view to sustaining the economic system during periods of economic depression.

(4) Stimulate stability of employment as a requisite of social and economic security.

(5) Allay and prevent the debilitating consequences of poor relief assistance.

*See Davis v. Gatson, supra,* 195 W.Va. at 151, 464 S.E.2d at 793; *Gibson v. Rutledge,* 171 W.Va. 164, 167–68, 298 S.E.2d 137, 141 (1982); *Lee–Norse Co. v. Rutledge,* 170 W.Va. at 166, 291 S.E.2d at 481. *See also Hill v. Board of Review,* 166 W.Va. 648, 651, 276 S.E.2d 805, 807 (1981).

█ Because of this liberal construction, the disqualification provisions of the unemployment statutes must be narrowly construed. *Peery v. Rutledge,* 177 W.Va. 548, 551, 355 S.E.2d 41, 45 (1987); *Gordon v.*

---

**3.** Because in drafting *W.Va.Code,* 21A–6–3(4) [1990], the Legislature used specific language to describe when an exception to the disqualification provision occurs, we labeled the exceptions according to the statutory language rather than resorting to general labor law terms, such as lockout.

*Rutledge,* 175 W.Va. at 685, 337 S.E.2d at 922; *Bennett v. Hix,* 139 W.Va. 75, 84, 79 S.E.2d 114, 119 (1953).

■ It is well-settled in this jurisdiction that the Board of Review's findings of fact will only be set aside if they are clearly wrong. However, the Board's conclusions of law are fully reviewable by this Court.

> The findings of fact of the Board of Review of the West Virginia Department of Employment Security are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo.*

Syl. pt. 3, *Adkins v. Gatson,* 192 W.Va. 561, 453 S.E.2d 395 (1994). *See* syl. pt. 1, *Davis v. Gatson, supra;* syllabus, *Courtney v. Rutledge,* 177 W.Va. 232, 351 S.E.2d 419 (1986); syl. pt. 2, *Perfin v. Cole,* 174 W.Va. 417, 327 S.E.2d 396 (1985); syl. pt. 1, *Kisamore v. Rutledge,* 166 W.Va. 675, 276 S.E.2d 821 (1981). *See also W.Va.Code,* 21A–7–21 [1943] ("In a judicial proceeding to review a decision of the board, the findings of fact of the board shall have like weight to that accorded to the findings of fact of a trial chancellor or judge in equity procedure.")

Against the background of the liberal construction of the unemployment compensation statute as a whole and the narrow construction of the statute's disqualification provisions, we apply these standards of review to the employees' arguments that they are entitled to benefits because they fall within the statutory exceptions of *W.Va.Code,* 21A–6–3(4).

### A.

#### The Employer Shutdown Exception of W.Va.Code, 21A–6–3(4)

■ Initially we address the third or employer shutdown exception because this exception was emphasized in the employees' appeal. The employees allege that they qualify for benefits under the employer shutdown exception because their offer to continue working under the terms of the expiring contract during negotiations was rejected by Contractors. Because Contractors agrees that it rejected the employees' offer to continue working under the expiring contract during negotiations, we review *de novo* the circuit court's determination that the employer shutdown exception does not apply to this uncontested fact pattern. *See* syl. pt. 3, *Adkins v. Gatson, supra* pp. 422–23, 465 S.E.2d at 879–880, for a discussion of our standard of review.

In *Lee–Norse,* 170 W.Va. at 163–65, 291 S.E.2d at 478–79, we discussed whether a work stoppage caused by an employer, which locked its gates because of "uncertainty about whether a strike was coming" was "caused by" or " 'because of' a labor dispute." In *Lee–Norse,* the focus was not on the statutory exceptions but on the cause of the work stoppage because "[t]here was no strike, and the union members had offered to work." *Lee–Norse,* 170 W.Va. at 163, 291 S.E.2d at 478. Based on our finding that the work stoppage in *Lee–Norse* was caused by the economic conditions, rather than a labor dispute, we held that the employees were not disqualified from benefits. Although *Lee–Norse* did not focus on the employer shutdown exception of *W.Va.Code,* 21A–6–3(4) [1990], it noted the following quotation was the "most frequently cited definition of lockout":

> ' "A *strike* is [a] cessation of work by employees in an effort to *get for the employees more desirable terms.* A *lockout* is a cessation of the furnishing of work to employees in an effort to *get for the employer more desirable terms.*" ' *Iron Molders' Union v. Allis–Chalmers Co.,* 7 Cir., 166 F. 45, 20 L.R.A., N.S., 315.

(Citations omitted.) (Emphasis added.) *Lee–Norse,* 170 W.Va. at 164 n. 3, 291 S.E.2d at 479 n. 3, *quoting,* syl. pt. 1, *Magner v. Kinney,* 141 Neb. 122, 2 N.W.2d 689 (1942).

■ The *Lee–Norse* definition of a lockout is reflected in the employer shutdown

exception of *W.Va.Code*, 21A–6–3(4), which allows the payment of employment benefits when "an employer shuts down his plant or operation or dismisses his employees in order to force wage reduction, changes in hours or working conditions." In order to qualify for benefits under the employer shutdown exception of *W.Va.Code*, 21A–6–3(4) [1990], an employee must show, first, that the employer acted to shut down the work site, and second, that the shutdown was "to force" a change detrimental to the employee. To show that the employer acted to shut down the work site, the employee must show that the employer did something that deprived the employee of the opportunity to work. For example, did the employer act to shut down his plant, operation or to dismiss his employees? To show that the employer's action was "to force" a change in benefits detrimental to the employee, the employee must show how the employer's proposed changes were detrimental to the employee. The employer shutdown exception becomes operational when an employer deprives an employee of work unless he/she agrees to less favorable benefits.

 Some guidance for determining when an employer deprives an employee of work (the first part of the employer shutdown exception) is found in *Lee–Norse*, which provides that a lockout occurs when the employees' offer to work on a "day-to-day basis" is rejected by the employer. Syl. pt. 2, *Lee–Norse* states: "W.Va.Code, 21A–6–3(4) was not intended to disqualify workers who were locked out during contract negotiations if they were willing to work on a day-to-day basis." Although an employer shutdown may be shown by such employer's acts as locking of the gates, closing the plant, refusing to admit workers, an employer shutdown also occurs when the employer rejects the employees' offer to work on a day-to-day basis.

Once an employer's act of shutting down is shown, the focus shifts to whether the employer was seeking "to force" a reduction in benefits (part two of the employer shutdown exception). In order to determine the party responsible for the work stoppage, some jurisdictions apply a *status quo* test holding the party seeking to change the current working conditions responsible for the stoppage. That is the party, who refuses to continue the working conditions as prescribed by the previous agreement for a reasonable time, is considered responsible for the work stoppage. Thus, when an employer rejects the employees' good faith offer to maintain the status quo for a reasonable period, the employees are eligible to receive unemployment benefits, but when the employees refuse to work in order to receive additional benefits, they are responsible for the work stoppage and therefore, ineligible for unemployment benefits. Pennsylvania first applied the status quo test in *Erie Forge & Steel Corp. v. Unemployment Compensation Bd. of Review*, 400 Pa. 440, 163 A.2d 91 (1960) (generally called *Vrotney* after one of the appellants therein).[4] In *Vrotney*, the Pennsylvania Supreme Court stated the test of responsibility for a work stoppage as follows:

Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a "lockout" and disqualification for unemployment compensation benefits in the case of a

---

4. The *Pa.Stat.Ann.* tit 43 § 802 [1981] provides, in pertinent part:

An employe[e] shall be ineligible for compensation for any week—

(d) In which his unemployment is due to a stoppage of work, which exists because of a

labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed. . . .

"stoppage of work because of a labor dispute" does not apply.

*Vrotney*, 400 Pa. at 444–45, 163 A.2d at 93–94. When the work stoppage assumes the form of a strike, the employees must show that they offered to continue working or that such an offer would have been useless. *Philco Corp. v. Unemployment Compensation Bd. of Review*, 430 Pa. 101, 242 A.2d 454 (1968) (union made no offer to continue working and voted to strike in advance of the contract's expiration). In Pennsylvania, the court examines the actions of the parties but refuses to consider the subjective motivations for the parties' actions thereby, bringing "clarity and relative predictability" for the determination of unemployment benefits during a work stoppage. *Local 730 v. Unemployment Compensation Bd. of Review*, 505 Pa. 480, 489–90, 480 A.2d 1000, 1005 (1984), *quoting, Unemployment Compensation Bd. of Review v. Sun Oil Co.*, 476 Pa. 589, 595, 383 A.2d 519, 522 (1978). In *Lee Nat. Corp. v. Unemployment Compensation Bd. of Review*, 206 Pa.Super. 96, 105, 211 A.2d 124, 128 (1965), the Pennsylvania court refused to consider factors such as an employer's profitability or economic difficulties in determining if the stoppage was a strike or lockout.

The ease of administration and relative predictability of the status quo test lead Ohio to adopt the test. *See Bays v. Shenango Co.*, 53 Ohio St.3d 132, 559 N.E.2d 740 (1990); *Eastalco Aluminum Co. v. Bd. of Appeals*, 314 Md. 460, 470, 551 A.2d 121, 126 (1988) (awarding benefits during a lockout based on the company's unilateral act refusing to allow employees "to continue working at the status quo during negotiations was the primary cause of the employees' unemployment"); *Alexander v. Employment Appeal Bd.*, 420 N.W.2d 812 (Iowa 1988) (finding the employees are not disqualified from benefits if work stoppage is due to an employer lockout, because the legislature intended an understanding similar to the holding in *Erie Forge & Steel Corp.*) *See also Sandoval v. Indus. Com'n.*, 110 Colo. 108, 130 P.2d 930 (1942) (looking to which party sought to change the status quo in order to determine if the employees engaged in a strike); *but see Abbott v. Industrial Claim Appeals Office of State of Colo.*, 796 P.2d 60, 61 (Colo.App.), *cert. denied*, (Colo.1990) (employer not required to adhere to terms of expired contract for reasonable time in order to avoid liability for unemployment benefits).

Both Pennsylvania and Ohio, before they adopted the status quo test, had used other tests to determine when a lockout had occurred.[5] In adopting the status quo test, these jurisdictions emphasized that "[s]ince the purpose of our unemployment compensation system is to compensate an individual when work has been denied him through no fault of his own, logically the test of whether a work stoppage resulted from a strike or a lock-out requires us to determine which side, union or management, first refused to continue operation under the status quo after the contract had technically expired, but while negotiations were continuing." *Bays v. Shenango Co., supra*, 53 Ohio St.3d at 135, 559 N.E.2d at 743, *quoting, Philco Corp. v. Unemp. Comp. Bd. of Review, supra*, 430 Pa. at 102, 242 A.2d at 455.

Although the language of our unemployment statute is unique,[6] the approaches tak-

---

5. *See Hogan v. Unemployment Compensation Bd. of Review*, 169 Pa.Super. 554, 83 A.2d 386 (1951), using "final cause test," which looks to the final act that caused the work stoppage; *Zanesville Rapid Transit, Inc. v. Bailey*, 168 Ohio St. 351, 155 N.E.2d 202 (1958), using "reasonableness standard" to find that given the financial circumstances, an employer's reduced wage offer did not constitute a lockout. Other jurisdictions have used other tests. *See Sunstar Foods, Inc. v. Uhlendorf*, 310 N.W.2d 80 (Minn.1981) (a 21–26% reduction in wages is so unreasonable as to constitute a lockout); *McKinley v. Cal. Employment Stabilization Com'n.* 34 Cal.2d 239, 209 P.2d 602 (1949), applying the "volitional test" to determine if the unemployment claimants were unemployed through some voluntary conduct on their part; *Assif v. Ad., Unemployment Compensation Act*, 137 Conn 393, 77 A.2d 772 (1951), examining the employer's new terms to determine if the employees could not reasonably be expected to continue to work.

6. Twenty-six states, the District of Columbia and the Virgin Islands have a lockout exception which allows employees who are locked out to receive unemployment benefits. These states in-

en by other jurisdictions are helpful in determining what measure should be applied to determine when there has been a "wage reduction, changes in hours or working conditions." *W.Va.Code*, 21A–6–3(4) [1990]. The status quo test of Pennsylvania and Ohio directs the use of the expiring contract as the measure to determine if the employer's offer reduced wages or made changes in hours or working conditions. The other tests require a more subjective analysis to determine if the employer's reduction or changes were reasonable in a particular economic climate, or who caused the changes, or who was the final actor. None of these subjective tests offers the ease of administration of using the expiring contract as the measure to determine when reductions or changes have occurred.

■ The structure and language of *W.Va. Code*, 21A–6–3(4) [1990] lead to the conclusion that the Legislature intended the expiring contract to be the measure for examining employer promoted changes under the employer shutdown exception. The Code specifies three separate exceptions that allow for the payment of unemployment benefits, namely the less than prevailing wages exception, the denial of collective bargaining exception and the employer shutdown exception. *See supra* p. 421, 465 S.E.2d at 878 for complete text of *W.Va.Code*, 21A–6–3(4) [1990]. The first or less than prevailing wages exception occurs when "the employees are required to accept wages, hours or conditions of employment substantially less favorable than those prevailing." The less than prevailing wages exception requires the use of the "prevailing" work conditions as the standard to measure if the employment offered is "substantially less favorable." When the offered employment is "substantially less favorable" than the "prevailing" work condi-

tions, *W.Va.Code*, 21A–6–3(4) [1990] authorizes the payment of benefits. If the same measure of "prevailing" work conditions is used to determine when an the employer's offer under the employer shutdown exception is "to force [a] wage reduction," the less than prevailing wages exception would effectively subsume the employer shutdown exception, thereby rendering the employer shutdown exception superfluous.

By outlining three exceptions to the disqualification provision, the Legislature must have intended three separate and distinct fact patterns to allow an employee to qualify for unemployment benefits. In order to have separate and distinct exceptions, the Legislature must have intended that the determination of a "wage reduction, changes in hours or working conditions" of the employer shutdown exception *not* be judged by the general prevailing wage standard of the less than prevailing wages exception, but be judged by the *specific standard of the expiring contract.*

■ Based on the structure and language of *W.Va.Code*, 21A–6–3(4) [1990], we find that the proper measure for considering an employer's offer in the employer shutdown exception is the parties' expiring contract. This objective standard, which carries out the structure and language of the unemployment benefits statute, is relatively easy to apply and allows the State to remain neutral in a labor dispute. Thus in a labor dispute, the employer shutdown exception of *W.Va.Code*, 21A–6–3(4) [1990], applies when an employer rejects continuing the expiring contract for a *reasonable* time "to force wage reduction, changes in hours or working conditions." [7] The determination of ·when an employer is trying "to force wage reduction"

clude: Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Utah, Vermont, West Virginia and Wisconsin. *U.S. Dept. of Labor, Employment and Training Administration, Unemployment Insurance Service, Comparison of State Unemployment*

*Insurance Laws*, Disqualification Table 405, column (7), January 1993 Comparison.

7. The determination of a "reasonable time" to continue working under the expiring contract is a factual question that must be made on a case-by-case basis. Examples of some of the facts that might be considered during such a determination include: status of the negotiations, pres-

or other changes in benefits under *W.Va. Code*, 21–6–3(4) [1990], is made by comparing the employer's proposed change(s) to the *status quo* as shown by the expiring contract. If the employer's proposed change(s) would result in detrimental terms for the employee, then the employer is considered to be seeking "to force wage reduction, changes in hours or working conditions."

In the present case, the parties agree that the employees offered to work under the existing contract during negotiations.[8] The parties also agree that Contractors' offer was a reduction in wages. These facts show the employees qualify for unemployment benefits under the employer shutdown exception of *W.Va.Code*, 21A–6–3(4) [1990]. Under *W.Va.Code*, 21A–6–3(4) [1990], employees are entitled to unemployment benefits when an employer rejects continuing the expiring contract for a reasonable time "to force wage reduction, changes in hours or working conditions." Although the Board of Review did not address the employer shutdown exception issue (employees were not represented by counsel before the Board), it found "[c]ertain of the wages and fringe benefits offered by the employer as of April 1, 1992, were lower than what had existed in the prior agreement between the employer and the union." This finding along with the parties' agreement that the employ-

ees had offered to continue working under the expiring contract show that the employees qualify for unemployment benefits under the employer shutdown exception found in *W.Va.Code*, 21A–6–3(4) [1990]. Under the status quo test adopted herein, we need not address Contractor's argument that the impasse was created by the union's contract with a competitor.[9] The subjective motives of the employer are not at issue; rather, the measuring is done by simply comparing the expiring contract to the employer's offer once a shutdown by the employer is shown.

### B.

### *The Less Than Prevailing Wages Exception of W.Va.Code, 21A–6–3(4)*

The employees also allege that they qualify for benefits under the less than prevailing wages or first exception of *W.Va. Code*, 21A–6–3(4) [1990] because Contractors offered wages, hours or working conditions that were "substantially less favorable than those prevailing for similar work in the locality." The employees argue that the prevailing wages should be based on the wages paid by a company that shut down twenty days after the start of the strike rather than the wages of a company still in business. The employees also argue that the higher wages of a company based in Weirton should have been given greater weight. Contractors

---

ence of pending cases, market conditions, changes in the parties' posture or any other relevant facts.

8. Because the parties agree that the employees' offer was to continue to work under the existing contract during negotiations and the employer, although rejecting the offer, did not argue that the negotiation period was unreasonable, we need not address whether the offered period of work was reasonable in this case. *See supra* note 7, for a discussion of some of the facts that might be considered to determine if the period of work under the expiring contract was "reasonable."

9. Contractors invites us to consider the subjective actions of the employees' union in another negotiation, namely the union's contract with Contractors' principal competitor, A–1 Concrete. According to Contractors, their competitor had a contract, entered into by the same union and signed on May 9, 1991, requiring A–1 to pay its

employees $4.00 to $5.00 less per hour than the 1989–92 Contractors' contract. Contractors maintains that the A–1 contract allows A–1 "to undercut our costs by at least $6.00 (sic) a yard." Contractors maintains that it is willing to have its employees work under the wages of the A–1 contract. Contractors also alleges that the A–1 contract forced another local ready-mix concrete company, Premier, to stop operations on April 20, 1992.

The subjective argument of Contractor shows the difficulty of a subjective analysis of an employer's reasons. Contractors seeks to have an evaluation of other contracts and other companies in order to justify its actions. A subjective evaluation such as the one sought by Contractors is complex and factually difficult to apply. We decline to apply subjective evaluations given the specific language of *W.Va.Code*, 21A–6–3(4) [1990].

maintains that the Board of Review correctly used their primary competitor's wages, hours and working conditions to determine if Contractors' offer was substantially less favorable than those prevailing for similar work. Contractors alleges that when the Weirton based company worked in the area, their wages were reduced to the local level.

■ The determination of whether Contractors' offer was "substantially less favorable than those prevailing for similar work" is a question of fact, and the factual findings of the Board of Review "are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. Syllabus Point 1, in part, *Kisamore v. Rutledge*, 166 W.Va. 675, 276 S.E.2d 821 (1981)." *Adkins v. Gatson*, 192 W.Va. at 565, 453 S.E.2d at 399. *See* syl. pt. 3, *Adkins v. Gatson*, *supra*, p. 423, 465 S.E.2d at 880, for a discussion of our standard of review.

■ In this case, the Board of Review compared Contractors' last offer before the collective bargaining agreement expired with the local prevailing wages as required by *Roberts v. Gatson, supra*.

The company's last offer before the work stoppage is the relevant starting point for determining if the employees are required to accept wages, hours, and conditions of employment substantially less favorable than those prevailing for similar work in the locality under W.Va.Code 21A–6–3(4) (1984).

Syl. pt. 6, *Roberts v. Gatson*.

Where there are other similar places of employment in the locality, their wages, hours, and conditions of employment must be compared to determine if the employer's last offer is substantially less favorable than prevailing conditions in the locality.

Syl. pt. 7, *Roberts v. Gatson*.

The Board of Review found Contractors' primary competitor had wages, hours and conditions of employment "equal to or less favorable than those which had been offered to the claimants herein." The record indicates that Contractors' offered the same hourly wages as those paid by Contractors' primary competitor. Contractors' offer included a $61 per week pension fund contribution, as compared with the competitor's contribution of $25 per week. Contractors' offer included six paid holidays as compared with the competitor's three paid holidays. The work requirements for pension contributions and holiday pay of Contractors' offer were more favorable than those of the competitor. Contractors' offer began overtime after an eight-hour day, but the competitor's overtime began after a forty-hour week. The competitor did have an incentive plan which the employees maintain greatly increased the wages. Contractors denied that the incentive plan resulted in increased pay.[10]

The Board also considered the wages and fringe benefits of the employees of Weirton Construction Company based on a finding that Weirton worked in the same area as Contractors. The Board found that Weirton's wages "are in some cases better than those offered to the claimants here." The Board found that the prevailing wage was not determined by the "highest that were put into evidence;" rather, the Board placed more emphasis on the wages of Contractors' primary competitor and concluded that Contractors' last offer was not "*substantially* less favorable. (Emphasis added.)" *W.Va. Code,* 21A–6–3(4) [1990].[11] Based on our examination of the record, we find that Board of Review's factual findings concerning Contractors' last offer are not clearly wrong and therefore, we agree that the less than prevailing wages exception of the statute does not apply in this case.

---

**10.** In an effort to support their allegation that the competitor's incentive plan resulted in substantially higher wages, the employees attempted to introduce payroll stubs with the employee's name obliterated. The Board gave no weight to the payroll stubs because no one present could testify to their authenticity or any factual matter that they supposedly proved. Contractors was thus denied the opportunity to cross examine anyone regarding these matters. Given the lack of information concerning these payroll stubs, we find no error in the Board's refusal to consider them.

**11.** The size of the geographic area considered in determining a locality's prevailing wage is a factual question and therefore, unique to a particular case. In this case, we defer the Board of Review's decision to admit evidence on wages from a broad area and then, to give greater

## C.

*The Denial of Collective Bargaining Exception of W.Va.Code, 21A–6–3(4)*

 The employees also allege that they are entitled to unemployment benefits because they were denied the right of collective bargaining, the second exception found in *W.Va.Code,* 21A–6–3(4) [1990]. *See supra* pp. 421–22, 465 S.E.2d at 878–879 for Code text. Generally, the denial of collective bargaining exception presents a mixed question of fact and law. Although deference is given the Board of Review's factual findings, we review *de novo* mixed questions of fact and law. *See* syl. pt. 3, *Adkins v. Gatson, supra,* pp. 422–23, 465 S.E.2d at 879–880, for a discussion of our standard of review. Because the record in this case shows that the Board of Review determined that "no evidence" was presented on the denial of collective bargaining exception, we have reviewed the record to determine if this factual finding was clearly wrong.

On appeal, the employees allege Contractors' president did not respond to their January 1992 letter "reminding him that the contract was about to expire." The employees also allege that "management refused to open its books to the employees, despite the company's demand for concessions."

In response, Contractors notes that nine bargaining sessions were held, two with a federal mediator and therefore, the complaints about the January 1992 letter "are hollow since the parties did meet prior to the expiration of the contract and afterwards." Contractors alleges that the employees' right to inspect its company's books is not at issue because Contractors never claimed an inability to pay rather "it is *not willing* to be obligated to pay an amount grossly in excess of what its competitor negotiated with the same Union. (Emphasis original.)" According to Contractors, the employees failed to

weight to the evidence on wages from the immediate area.

bring this issue to the National Labor Relations Board, even though the employees filed three unfair labor charges, all of which were rejected as without merit by the National Labor Relations Board.

*Roberts v. Gatson, supra,* 182 W.Va. at 767–771, 392 S.E.2d at 207–212, discusses some general guidelines for determining when the right to collective bargaining had been denied. Syl. pt. 2, *Roberts v. Gatson* states:

A refusal to engage in the collective bargaining process or to negotiate on those mandatory subjects that traditionally form the basis of the collective bargaining agreement so frustrates the process as to constitute a denial of the right of collective bargaining under W.Va.Code, 21A–6–3(4) (1984).

Although we agree that a refusal "to bargain collectively with the representatives of his employees" would be a denial of the right to collective bargaining (*Roberts v. Gatson,* 182 W.Va. at 767, 392 S.E.2d at 207), nothing in this record shows such a refusal.[12] Because the record shows that Contractors did negotiate with its employees before the contract expired, the letter incident standing alone was not a denial of the right to bargain collectively. Although when a company maintains "it could not afford to give its employees pay raises" and refuses to allow an inspection of its books, " 'a finding of a failure to bargain in good faith' " could be supported (*Roberts v. Gatson,* 182 W.Va. at 770, 392 S.E.2d at 210, *quoting, N.L.R.B. v. Truitt Mfg. Co.,* 351 U.S. 149, 153, 76 S.Ct. 753, 756, 100 L.Ed. 1027, 1032 (1956)), Contractors did not allege an inability to pay. Syl. p. 4, *Roberts v. Gatson* states:

In order to constitute a denial of the right of collective bargaining under W.Va. Code, 21A–6–3(4) (1984), the failure to furnish requested information must be shown to relate to a mandatory subject or collec-

12. Our review of the hearings before the Board of Review, shows that the parties engaged in extensive bargaining, even though that bargaining failed to produce a contract.

tive bargaining. Moreover, the information requested must be so essential that the collective bargaining process will be frustrated without it. Finally, it is appropriate to consider whether the employer has a bona fide reason for the failure to disclose.

Given that Contractors' reason for refusing the information was that it did not wish to pay more than "what its competitor negotiated with the same Union," we find that the information requested was not "so essential that the collective bargaining process ... [was] frustrated without it." Syl. pt. 4, in part, *Roberts v. Gatson.*

The Board of Review found the "parties bargained for a new contract but were not able to reach one." In *Roberts v. Gatson,* 182 W.Va. at 771, 392 S.E.2d at 211, we said that "[u]nder our unemployment compensation statute, the test is not whether the employer may have committed an unfair labor practice, but whether his actions amounted to the denial of the right of collective bargaining." Based on our review of the record, we find that the Board of Review was not clearly wrong in finding "[n]o evidence was offered to show that the claimants had been denied the right of collective bargaining," and therefore, we agree that the denial of the collective bargaining exception of the statute does not apply in this case.

### III.

### *Conclusion*

Although we agree with the Board of Review and the circuit court that the employees are not entitled to unemployment benefits under the less than prevailing wages or denial of collective bargaining exceptions of *W.Va.Code,* 21A–6–3(4) [1990], we find that the employees are entitled to unemployment benefits under the employer shutdown exception. Our finding of entitlement is based on the record as developed below showing that Contractors rejected the employees' offer to continue to work under the expiring contract during negotiations, and thus, Contractors, in

effect, "shut down his plant ... in order to force wage reduction, changes in hours or working conditions." *W.Va.Code,* 21A–6–3(4) [1990].

For the above stated reasons, the decision of the Circuit Court of Kanawha County is reversed, and benefits are granted to each of these petitioners who are otherwise eligible under the unemployment benefits statute.

RECHT, J., deeming himself disqualified, did not participate.

ALBRIGHT, J., did not participate.