IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED

**December 6, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**AMANDA P. JONES,**
**Claimant Below, Petitioner**

**v.) No. 24-ICA-25**    (WorkForce W. Va. Bd. of Rev. Case No.: R-2023-1634)

**UNITED STATES POSTAL SERVICE,**
**Respondent Below, Respondent**

**and**

**WORKFORCE WEST VIRGINIA,**
**Respondent**


**MEMORANDUM DECISION**

Petitioner Amanda P. Jones appeals the November 15, 2023, decision of WorkForce West Virginia's Board of Review ("Board"). Respondent United States Postal Service ("USPS") did not participate in this appeal. WorkForce West Virginia ("WorkForce") filed a response.[1] Ms. Jones did not file a reply. The issue on appeal is whether the Board erred by finding that Ms. Jones was disqualified from receiving unemployment benefits because she left work voluntarily without good cause involving fault on the part of the employer.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for resolution through a memorandum decision. For the reasons set forth below, the Board's decision is vacated and this case is remanded for further proceedings consistent with this decision.

Ms. Jones was employed by the USPS from August 3, 2014, until June 6, 2023. Years prior to this employment, Ms. Jones was diagnosed with epilepsy that causes seizures. During the last three years at USPS, beginning on September 1, 2020, Ms. Jones began working as a customer service supervisor in Martinsburg, West Virginia. Her job duties required her, among other things, to be on the floor near automatic machinery where

---

[1] Ms. Jones is self-represented. WorkForce is represented by Kimberly A. Levy, Esq.

voluminous mail and parcels were being transported. Additionally, Ms. Jones asserted that her desk was in an area raised off the floor. She was never required to drive as part of her job. It was uncontested that as a supervisor, Ms. Jones was not entitled to light-duty work and would be required to seek any workplace accommodations through the USPS Kentucky-West Virginia District Reasonable Accommodations Committee ("Committee").

Laryssa Bachtell was Ms. Jones' direct manager for ten months preceding Ms. Jones' last day of employment. For reasons not identified in the record, on March 1, 2023, Ms. Bachtell provided a copy of Ms. Jones' medical documentation via email to Kelley Moore, an occupational health nurse administrator for USPS. The documentation purportedly stated that Ms. Jones would be unable to perform supervisory walking inspections until her health condition resolved.[2] In response, Ms. Moore instructed Ms. Bachtell to discuss light duty work and reasonable accommodations with Ms. Jones and to provide her with a Return to Work/Light Duty medical form.

Ms. Jones' physician, Dr. Richard T. Leschek, D.O., completed a KY-WV District Return to Work/Light Duty Medical Certification form dated April 6, 2023. Dr. Leschek reported that Ms. Jones was diagnosed with epilepsy at the age of sixteen and continues to have occasional seizures. Dr. Leschek indicated that Ms. Jones was incapacitated from March 20, 2023, through April 17, 2023, but was "able to safely return to work" in a light-duty capacity "without hazard to self or others effective April 17, 2023." This physician noted that Ms. Jones had a permanent restriction of "no driving."

On April 28, 2023, Ms. Jones filed a request for reasonable accommodation with the Committee pursuant to section 542 of the USPS policy handbook, requesting that she be prohibited from driving or operating heavy machinery, that she perform some office functions from home for approximately two hours that included scheduling and answering emails, and that she be provided a rubber mat at her work area.

On May 30, 2023, the Committee, after reviewing the form submitted by Dr. Leschek and meeting with Ms. Jones, denied Ms. Jones' request for reasonable accommodations by stating that she was "not a qualified individual with a disability within the meaning of the Rehabilitation Act" and could not "be accommodated to perform the essential functions of [her] position or another vacant, funded position at or below [her] current job level." Ms. Jones appealed the Committee's decision to Mr. Harvey, the district manager of human resources. On June 14, 2023, Mr. Harvey agreed with the Committee's decision and informed Ms. Jones that she could file an "EEO complaint pursuant to 29 CFR 1614." Ms. Jones subsequently filed an EEO complaint, and the ensuing decision

---

[2] This medical document was not provided in the designated record.

found that she had established that she had an actual disability within the meaning of the Rehabilitation Act.[3]

On June 3, 2023, while Ms. Jones' request for reasonable accommodations was pending on appeal, Ms. Bachtell filled out a light duty request form that gave Ms. Jones a temporary position as "customer service supervisor without driving" between June 3, 2023, and June 16, 2023, for the hours of 7:30 a.m. to 4:00 p.m., which was the position she already held and the hours she had always worked. Importantly, this light duty request form contains two separate halves. The first half is on the top portion of the form and specifically requires the request for light duty to be completed and signed by the employee. The second half, contained on the bottom portion of the form, is for "management action" and requires management to fill out the effective date, end date, work hours, restrictions, and description of the job assignment. The management section contains a space for the employee to sign stating whether they "[a]ccept or [r]eject" the job assignment. Although the top portion was filled out by Ms. Bachtell and not signed by Ms. Jones, the bottom portion was signed by Ms. Jones that she accepted the temporary light duty assignment as a customer service supervisor without driving between June 3, 2023, and June 16, 2023, for the hours of 7:30 a.m. to 4:00 p.m.

On June 15, 2023, Ms. Bachtell completed another two-week temporary light duty request form that gave Ms. Jones an assignment of "rural route inspections, normal SCS duties, safety observations, 4000b's, [and] closing facility after carrier returns" with the restrictions of no driving and no walking city inspections. Neither portion of the form was signed by Ms. Jones. The words "refused job offer" were written in the signature portion on the bottom portion of the form.

On June 16, 2023, the last day of Ms. Jones' temporary light duty assignment, Ms. Moore sent an email to Ms. Bachtell stating that the Return to Work/Light Duty Medical Certification form was due that day. Ms. Moore stated that the documentation should include a current progress note, any work restrictions, and the date of the anticipated duration, and whether Ms. Jones could return to work safely for herself and others.[4]

Also on June 16, 2023, Ms. Bachtell sent an email to Ms. Jones, stating the following:

---

[3] The designated record is devoid of the date of the decision from the EEO complaint.

[4] It appears that this form was filled out on April 6, 2023, as previously mentioned, and USPS had received a copy of the form on April 28, 2023, at the latest. Thus, it is unclear if Ms. Moore was requesting an additional form or had not been provided with the original form.

Due to the refusal of the light duty job offer today June 16, 2023 [at] 2:30 p[.]m[.], you will not be needed since you are not performing your job duties in the morning. There have been multiple jobs assigned to you on your previous light duty offers that were not completed on the morning shift. By offering you a different shift with less duties assigned to complete[,] I am trying to assist you.

With the refusal of the current light duty offer, do not report to work tomorrow, June 17, 2023. You will not need to report until further notice. Your accesses will be suspended until you have been notified that you can return to work.

Ms. Jones responded, stating:

Not a problem. Per our conversation, you stated that I am not needed because I am not able to perform "morning supervisor" duties and labor advised you to end my job assignment. Please send me a[n] email from the labor department of any literature that you have that labor suggested for you to end my job. My personal email is . . . or please feel free to mail the literature to my home. Please advise me if you are placing me [o]n an administrative leave status[.] Also, [a]re you requesting me to clock off for today? Please reply at your as soon as possible [sic] so that I may govern myself accordingly. I will greatly appreciate it! Have a blessed day!

Ms. Bachtell replied to Ms. Jones, stating that "the only reason you are not being extended a modified assignment is the refusal of the change in scheduled hours. You will not be placed on administrative leave at this time. You are to finish out your 8[-]hour day today." Based on these emails, Ms. Jones completed her work on June 16, 2023, and did not return to work. Thereafter, Ms. Jones applied with WorkForce for unemployment compensation benefits.

On July 17, 2023, a WorkForce Deputy's Decision found that USPS had failed to prove that Ms. Jones engaged in misconduct as the reason for her discharge from employment. The Deputy held that she was eligible for unemployment benefits. USPS appealed this decision to the Board for an administrative hearing before its administrative law judge ("ALJ").

The administrative hearing on USPS' appeal was held on August 22, 2023. Ms. Jones and Ms. Bachtell, as a representative of USPS, participated in the hearing. The ALJ informed the parties that each would have an opportunity to testify and cross-examine each other. The ALJ stated that "the sole issue is whether or not [Ms. Jones] was discharged for misconduct. . . . the burden of proof, as I said earlier, in a discharge case, is on the employer. That means that the employer has to properly introduce evidence that proves that [Ms.

4

Jones] committed some act of misconduct." However, Ms. Bachtell testified that Ms. Jones was neither terminated nor quit. Ms. Bachtell testified that Ms. Jones had a permanent disability restriction which prevented her from driving and because of her restriction, Ms. Bachtell offered her a light duty assignment even though as a supervisor, Ms. Jones was "not entitled to receive light duty." Particularly, Ms. Bachtell stated that, "[m]anagement is not entitled to light duty job offers. We just did it, as a good faith, until we could get reasonable accommodations and then we went through the appeal process."

Ms. Jones testified that she had approximately four seizures at work since 2020. She testified that she never requested a light duty assignment because her only restriction was driving, and she had never been assigned to drive at her job in the last four years because of her seizures; thus, requesting a light duty assignment because of her driving restriction was nonsensical. Ms. Jones testified that as supervisor, she went through the Committee to request reasonable accommodations, but none of her accommodations had anything to do with driving. She testified that Ms. Bachtell offered her light duty while the reasonable accommodations process was pending with the Committee, but she refused the offer. At the end of the hearing, the ALJ stated that he did not have a ruling yet and would need to research the law.[5]

By order dated August 25, 2023, the ALJ found the following:

1. The claimant was employed by the above employer as a non-union supervisor from August 3, 2014 until June 6, 2023. The claimant worked full-time (approximately 40 hours per week) and earned $43.00 per hour at the time of her separation from employment.

2. The claimant's regularly scheduled shift was 7:30 a.m. to 4:30 p.m. and had been the same for the previous four years.

3. The employer is the United States Postal Service located in Martinsburg, West Virginia, with 96 employees working at this post office.

4. The claimant suffers from a health condition that requires a permanent job restriction prohibiting her from driving.

5. The claimant sought a different position based on her fear that she might have a seizure and be physically hurt because of the amount of activity

---

[5] A review of the transcript from the administrative hearing indicates that Ms. Jones was not given the opportunity to question Ms. Bachtell on direct-examination or cross-examination.

on the floor, the volume of mail and parcels being transported, and the amount of automatic machinery that could be hazardous if she had a seizure.

6. As a non-union member and supervisor, the claimant is not entitled to light duty work.

7. On June 16, 2023, the employer offered her an alternative position as a customer service supervisor because the term of her light duty position expired that day.

8. In the new position as a customer service supervisor, the claimant would be sitting at a desk off of the floor, checking-in drivers returning from their routes and completing postal surveys at the end of the night. However, this position's shift hours were from 11:00 a.m. to 7:30 p.m.

9. At the same time, the employer was also working with the claimant and its legal division in an attempt to procure a medical separation for the claimant, which was still pending.

10. Additionally, the employer and claimant had submitted medical documentation supporting her request for a light duty accommodation, but the same was denied.

11. When the claimant was asked if she would accept this new position, she advised the employer that she was fine with the position, but refused to work the shift as it was set, namely 11:00 a.m. to 7:30 p.m.

12. The claimant then presented the employer with a counteroffer to work from home for either the first or last two hours of her shift as a supervisor of customer service. Under the employer's policies and procedures, this accommodation could not be granted.

13. As the employer had work available and made every reasonable effort to accommodate the claimant, there can be no fault attributed to the employer for the claimant's voluntary separation from employment.

14. The claimant left work voluntarily without good cause involving fault on the part of the employer.

The ALJ reversed the Deputy's decision, finding that Ms. Jones had the burden of proving that there was good cause involving fault on the part of the employer for her to leave employment and concluded that Ms. Jones left work voluntarily and without good cause

involving fault on the part of the employer. Ms. Jones appealed the ALJ's decision to the Board.

On November 15, 2023, the Board affirmed the ALJ's conclusion that Ms. Jones "left work voluntarily without good cause involving fault on the part of the employer" and was disqualified from receiving unemployment benefits. It is from this order that Ms. Jones now appeals.

In this appeal, our standard of review is as follows:

> The findings of fact of the Board of Review of [WorkForce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*.

*Taylor v. WorkForce W. Va.*, 249 W. Va. 381, 386, 895 S.E.2d 236, 241 (Ct. App. 2023) (quoting Syl. Pt. 3, *Adkins v. Gatson*, 192 W. Va. 561, 453 S.E.2d 395 (1994)).

The legal conclusion that an employee quit her job "voluntarily without good cause involving fault on the part of the employer" within the meaning of West Virginia Code §21A-6-3(1) [2005] is subject to a de novo standard of review. *See May v. Chair and Members, Bd. of Review*, 222 W. Va. 373, 376, 664 S.E.2d 714, 717 (2008) (per curiam).

With these standards in mind, we now address Ms. Jones' arguments. On appeal, Ms. Jones raises three assignments of error, which we will consolidate.[6] She asserts that the Board's findings were erroneous because it failed to consider evidence that established that supervisors were not entitled to light duty assignments, and that the light duty assignment offered to her was a two-week temporary assignment and not a permanent position. In support of her argument, she contends that since she was a supervisor, she was not entitled to the light duty assignment that she was offered and that her request for accommodations due to her seizures was being handled appropriately through the Committee. She argues that had the Board properly considered the evidence she submitted, it would have found that she did not leave employment voluntarily. Rather, it would have found that she was "forced out" because USPS was unable to accommodate her disability.

The Supreme Court of Appeals of West Virginia has previously held that,

---

[6] *See generally Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating that "the assignments of error will be consolidated and discussed accordingly.").

7

[t]he Legislature, in apparent recognition that a deputy commissioner may rule on an unemployment compensation claim without conducting an initial hearing, has provided a statutory right to a hearing of an appeal from the deputy's decision. W. Va. Code, 21A-7-8 (1978), grants to either party the right to an appeal from a deputy's ruling and provides that such party shall be entitled to *a fair hearing and reasonable opportunity to be heard before an appeal tribunal.*

Syl. Pt. 2, *Parks v. Board of Review of W. Va. Dep't of Emp't Sec.,* 188 W. Va. 447, 425 S.E.2d 123 (1992) (emphasis added). The Court has further recognized that "[u]nemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof." Syl. Pt. 6, *Davis v. Hix,* 140 W. Va. 398, 84 S.E.2d 404 (1954). *Accord* Syl. Pt. 2, *Smittle v. Gatson,* 195 W. Va. 416, 465 S.E.2d 873 (1995).

Upon review, we find multiple errors in the Board's affirmance of the ALJ's decision. First, we find that Ms. Jones was not given a full and fair hearing before the ALJ. "[P]arties shall be entitled to a full and complete hearing" before the ALJ. W. Va. Code § 21A-7-7a (1972). "Every party shall have the right of cross-examination of witnesses who testify, and shall have the right to submit rebuttal evidence." W. Va. Code § 29A-5-2(c) (1964). The State Administrative Procedures Act states, in relevant part, that "[e]ach agency shall adopt appropriate rules of procedure for hearing in contested cases." W. Va. Code § 29A-5-1 (1964).

In the notice of hearing provided by WorkForce, the parties were instructed to visit its website for information on the hearing process. Pursuant to WorkForce's website, each party has the right to question opposing parties during the hearing before the ALJ.[7] Specifically, the website states that "[t]his is the only opportunity during the appeal process where you will be able to provide evidence, witnesses, [and] cross-examine the other party and their witnesses." *Id*. Although the ALJ informed the parties that they would be entitled to cross examine each other, the record establishes that Ms. Jones was deprived of this opportunity. The ALJ questioned Ms. Bachtell on direct and when it was Ms. Jones' turn to cross examine Ms. Bachtell, the ALJ began questioning Ms. Jones instead. Ms. Jones was not permitted to ask any questions of Ms. Bachtell, on direct or otherwise. Further, during the hearing, the ALJ informed the parties that USPS had the burden of proving that Ms. Jones committed an act of misconduct when it terminated her employment. However, without informing the parties during the hearing, the resulting order placed the burden upon

---

[7] WorkForce W. Va. Disqualification & Appeals (2024) (The site provides information about the appeal procedure) https://workforcewv.org/unemployment-insurance-benefits/my-unemployment-claim/disqualification-appeals/ (last visited Nov. 7, 2024).

the claimant, and not the employer, and found that Ms. Jones had failed to meet her burden of proving there was good cause involving fault on USPS for her to leave employment.

Next, we find merit in multiple concerns raised by Ms. Jones in the Board's summary adoption of the ALJ's findings of fact. First, we find that the testimony and evidence presented failed to establish that Ms. Jones "sought" a different "position" based on her fear that she might have a seizure. While Ms. Jones may have been offered a light duty position, we find nothing in the record indicating she requested a different position. In fact, the record indicates that she only sought reasonable accommodations for her supervisor position from the Committee and that the light duty request forms were filled out by Ms. Bachtell. We also find that the record fails to support that Ms. Jones was offered an "alternative position as a customer service supervisor[.]" Ms. Jones had been a customer service supervisor since September 1, 2020, and so the Board's finding that she was offered an alternative position as a customer service supervisor, a position she already held, appears to be erroneous. Additionally, we conclude that the Board's finding that, as a supervisor, Ms. Jones was not entitled to light duty work appears to conflict with its determination that since she rejected the light duty work offer, she voluntarily left her employment for non-medical reasons. The Board's findings of fact relating to Ms. Jones' job title and whether she was entitled to light duty work assignments do not appear consistent with the evidence in the record.

Accordingly, for the foregoing reasons, we remand this case with directions to further develop the record and issue an order with sufficient findings of fact and conclusions of law to facilitate a meaningful appellate review. Specifically, the Board is instructed to require the ALJ to hold a new hearing and permit both parties to question witnesses and submit any rebuttal evidence. The Board is further instructed to issue an order with specific findings and conclusions to address the following: (1) whether Ms. Jones was voluntarily unemployed without good cause involving fault on the part of USPS; (2) whether Ms. Jones was constructively discharged for committing either gross misconduct or simple misconduct; or (3) whether Ms. Jones produced a valid "medical quit" pursuant to West Virginia Code § 21A-6-3(1) (2020).

Accordingly, we vacate the Board's November 15, 2023, decision and remand to the Board with directions to enter an order remanding this matter to the ALJ to hold a fair and meaningful hearing consistent with this decision.

Vacated and Remanded.

**ISSUED:** December 6, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen

**DISSENTING:**

Judge Daniel W. Greear


GREEAR, JUDGE, dissenting:

I respectfully dissent from the majority's decision to vacate and remand the November 15, 2023, decision of the WorkForce Board of Review ("Board"). As an appellate court, we must review the Board's decision pursuant to Rule 5 of the Rules of Appellate Procedure and West Virginia Code § 29A-5-4 (2021). Pursuant to West Virginia Code § 29A-5-4(f), "[t]he review shall be conducted by the court without a jury and shall be upon the record made before the agency[.]" Findings of fact by the administrative officer are accorded deference, unless the reviewing court believes the findings to be clearly wrong. *See Straub v. Reed*, 239 W. Va. 844, 806 S.E.2d 768 (2017).

Based upon the record below, the Board, agreeing with the findings of the administrative law judge ("ALJ"), determined that Ms. Jones was provided an opportunity to continue her employment with USPS in essentially the same position, through an alternative employment offer that would require her to modify only her work schedule.[8] Nothing in the record disputes this offer of alternative employment and is even particularly acknowledged by Ms. Jones.[9] Thus, her refusal to accept the alternative employment offer, in light of the evidence presented, suggests that she refused to continue her employment with USPS. Due to her refusal to accept this alternative offer of continued employment, I cannot say the Board was clearly wrong in its finding.

Lastly, I write to address the majority's finding of a breach of Ms. Jones' due process rights. West Virginia Code § 29A-5-4(e) provides that

---

[8] In testimony provided to the ALJ during an August 22, 2023, hearing, it was established that the alternative employment offer extended by USPS to Ms. Jones would have changed her work schedule from 7:30 a.m. to 4:30 p.m., to 11:00 a.m. to 7:30 p.m.

[9] Ms. Jones acknowledged that the alternative employment offer was a light duty job with the same tasks she had previously completed while on light duty.

10

> [a]ppeals taken on questions of law, fact, or both, shall be heard upon assignments of error filed in the cause or set out in the briefs of the appellant. Errors not argued by brief may be disregarded, but the court may consider and decide errors which are not assigned or argued.

Thus, to be afforded relief, Ms. Jones must assert an alleged violation of her due process rights in her appellate brief. Alternatively, this Court would have to find that such error was a plain error that infringed upon a substantial right of Ms. Jones.

Here, Ms. Jones did not allege or argue any violation of her due process rights in her brief. Accordingly, this Court would have to find plain error as to this issue. However, it is established in the record below that there was no deprivation of Ms. Jones' due process rights. The transcript of the August 22, 2023, hearing ("transcript") substantiates that Ms. Jones was afforded notice and the opportunity to present her case and all her desired arguments. She could have called any witness on her behalf and she had the opportunity to cross-examine any witnesses presented; however, she did not do so.[10] Instead, Ms. Jones relied only on her uncorroborated testimony, which the Board and the ALJ found unpersuasive. It is clear from a review of the entirety of the transcript that Ms. Jones effectively communicated her argument to the ALJ, as the ALJ noted, at the conclusion of the hearing

| Judge: | Okay. So I think that the real issue today, after I've listened to both sides, . . . is the change of – are you allowed to refuse a job because of the change in – was it a material change of circumstances to change the [work] time and the tasks that you |
|---|---|

---

[10] In an exchange with the ALJ during the August 22, 2023, hearing, the ALJ advised Ms. Jones

| Judge: | Now, we'll go to you, Ms. Jones. Do you have any questions for Ms. Bachtell [USPS representative]? Now, and here's what I'll tell you. You can ask questions of Ms. Bachtell. You can start answering questions from me. Let me run you through your direct testimony and then tell me your side of the story or we could do both, but you've got to let me know which way – how you want to proceed. Okay? Do you want to ask Ms. Bachtell questions? |
|---|---|
| Ms. Jones: | Yes, I'm sorry. |
| Judge: | Go ahead. |

would have been doing if you would have taken the second job offer? Does that sound reasonable?

* * *

Claimant:   Yes, that's all I'm saying. I just wanted you to see that the tasks from the previous light-duty didn't change from this. She just wanted to change the hours, but the tasks . . . were the same.

While the majority correctly notes that the ALJ's notice and statements during the hearing were initially solely focused on the issue of termination for misconduct and the accompanying burden of proof, the record established that during the hearing the ALJ recognized the real issue between the parties. *See supra* n.3. Wherefore, based on the review of the record as a whole, I find no due process violation present in the underlying proceedings.